56    41|
63   264|

P. Sanford Ross et al.

*v.*

The American Employers' Liability Insurance Company, an insolvent corporation.

[Filed July 6th, 1897.]

1. Under policies issued to employers and railroad companies, insuring them against damages with which they might be "legally charged" by reason of accident to employes, or to persons or property while being transported, the liability of the insurer arose on the happening of the injury, and not at the time judgment was recovered against the insured for such injury.

2. Policies issued to employers and railroad companies, insuring them against accidents to employes and to persons and property transported, provided that, if legal proceedings were taken against the insured to enforce a claim for damages, the insurance company should have the conduct and control of defending against the same, with the right to compromise and take appeals, the company assuming all costs and expenses.—*Held*, that under such contract, and independent of it, the reasonable charges of attorneys in defending actions against persons injured for accidents which might result in liability of the company were proper claims against it for allowance by a receiver, and this though the services were rendered under a retainer by the company before the receiver was appointed.

Hearing upon application of the receiver, Mr. Richard V. Lindabury, for directions.

*Mr. Richard V. Lindabury, pro se.*

*Mr. Carroll Robbins,* for the Virginia policyholders.

*Mr. Hamilton Wallis,* for one class of policyholders.

*Mr. William H. Corbin,* for another class.

*Mr. William D. Edwards* and *Mr. Proctor* (of Boston), for certain claimants.

PITNEY, V. C.

This is an application, upon petition, by the receiver of the insolvent corporation defendant, upon notice to all the creditors, for instructions in the matter of paying a dividend, as to what creditors shall share in it. All the creditors had notice of the application and many of them appeared by counsel.

Three questions were presented:

*First.* The insolvent corporation issued several kinds or classes of policies of insurance. One class of insurance was by a policy called an "Employers' Liability Policy" to employers insuring against their liability for accidents happening to employes.

In this policy the undertaking is expressed in the following language:

"That said company will pay to the insured all damages with which the insured may be legally charged under the common law, or any statute (not exceeding the amounts hereinafter limited), for, or by reason of, any accidental injuries, fatal or otherwise, happening to any employe or employes of the insured," &c.

Another policy issued by the company is called a "Railroad Liability Policy," and was issued to railroads, in which the covenant is:

"That said company will pay to the insured, or their legal representatives, all damages with which the insured may be *legally charged*, or which the insured may be required to pay (not exceeding the amounts hereinafter limited) for or by reason of any liability on account of injuries inflicted upon the person or property of any person or persons whomsoever while traveling on the railroad of the insured," &c.

Another class of policies was issued to owners of steam boilers, and another to owners of elevators, for injuries occurring in their operation. But no question arises under either.

The first question arises under the "Employers' Liability" policies and the "Railroad Liability" policies. In these policies provision is made for the service of notice by the insured upon the insurer of claims for damages for accidents, and an opportunity given to the insurer to defend the same.

Two classes of claims have been audited and adjusted by the receiver—first, those in which the accident happened, claim made and judgment recovered against the insured before the decree of insolvency; second, those in which the accident happened before the decree of insolvency, but in which the claim was made and allowed or judgment recovered on it after the decree of insolvency.

It is urged, on behalf of the first class, that by the true construction of the policy it should have priority and be paid out of the assets of the insolvent corporation before any of the other claims are paid.

.The argument in support of this is as follows: That by the decree of insolvency all liability by the insolvent company as insurer from that time on ceases, and the assets of the company must be divided in accordance with the doctrine of *Vanatta v. New Jersey Mutual Life Insurance Co., 4 Stew. Eq. 15; S. C., sub nom. Mayer v. Attorney-General, 5 Stew. Eq. 815; Duryee v. United States Credit System Co., 19 N. J. L. J. 18; S. C. on appeal, sub nom. Gray v. Reynolds, 10 Dick. Ch. Rep. 311.*

The ground taken is that the person injured is not insured, but that the person liable for the injury is insured, and that the liability of the insurer to the insured arises only after the insured is "*legally charged,*" in the language of the covenant above quoted, with liability on account of the accident; or, as put by the brief of counsel: "In all these cases two things must co-exist before any liability arose upon the policy of the defendant corporation—first, there must have been an injury to some person, and second, by reason of such injury the insured must have been legally charged with or required to pay something." Or, in other words, the happening of the accident for which the party insured was ultimately held liable did not fasten any liability on the insurer, but that such liability, on the part of the insurer, arose entirely out of the recovery of judgment by the injured party against the insured party, whereby he became "*legally charged.*"

I am unable to adopt this doctrine. The vice of the argument in support of it is that it treats the liability of the insured

in the matter as depending not upon the intrinsic character of the accident, but entirely upon the question of whether or not a judgment shall be rendered against it thereon; precisely as the question of liability on a policy of life, fire or marine insurance is dependent entirely upon the actual occurrence—the death of the party, of the fire, or the actual shipwreck.

The recovery of the judgment against the insured by the injured party is not the injury against which the insurer insures him, but it is the liability for the consequences of the accident against which he is insured, and of which liability the judgment is a mere test or mode of proof. In fact, the recovery of the judgment is a mere mode by which the insured proves to the insurer that the intrinsic character of the accident was such that he was liable for the consequences of it. In this respect the judgment resembles the proof of loss to be furnished to an ordinary insurer against fire or shipwreck before action brought, or proof of death in case of life insurance. These are usually prerequisites to liability to action, but do not constitute the cause of action. And in the case of a judgment against the party insured under one of these policies for damages for the result of an accident, the liability, though legally fixed at that time, relates back to the accident itself. In contemplation of law the insured either was or was not, from the first, liable for the consequence of the accident; and the presumption is that the result of an investigation of the facts was never doubtful from the first, and always sure to result according to the actual fact. So that the recovery of the judgment cannot be held or treated in the law as a contingency which may or may not happen, but a mere judicial ascertainment of the intrinsic character of the occurrence which determined the liability of the insured.

Again, another office of the judgment is to ascertain, by the only legal mode, the extent of the damages; precisely as the extent of the damages in case of a fire or shipwreck is to be ascertained by an inquiry undertaken before payment.

A question something like this arose in *Duryee* v. *United States Credit System Co., supra,* and was decided in favor of the view I have adopted; and that part of the decree advised by

the learned vice-chancellor in that case was affirmed on appeal. *Gray* v. *Reynolds, supra.*

This very question arose, and was carefully considered and decided, in the case of *Boston, &c., Co.* v. *Mercantile Trust and Deposit Co.*, by the court of appeals of Maryland, as reported in *82 Md. 535*. That was a case precisely like this, of an insolvent company, which seems to have been engaged in precisely the same business as was the insolvent company here. The court, in that case, held that the insolvency of the company canceled all outstanding policies of insurance for the future, relying upon the case of *Mayer* v. *Attorney-General, supra*, as illustrated in *Doane* v. *Millville Mutual Insurance Co., 16 Stew. Eq. 522.* The contest there was between two classes of claims, precisely as it is here. The language of the policies there is not literally quoted, but it appears to have been very much, if not precisely, the same as the language in the policies in this case above quoted. The trial court excluded the second class of claims here under consideration, but the court of appeals, consisting of eight judges, unanimously reversed the decision in that respect, and held that both classes were entitled to participate equally in the assets of the insolvent corporation. I refer to the reasoning of the court in *82 Md. 535.*

This result is the only one which can be relied upon to do anything like justice between the parties. The rule contended for by the counsel who argued so ably in favor of the first class of claimants, would result in making an unfair distinction between cases in which there is no intrinsic difference. Two accidents might happen on the same day, and a judgment in one be recovered very shortly and before insolvency, and a judgment in the other might be delayed by litigation for months and years and until after insolvency, and yet there might be no difference in the intrinsic merits of either.

*Second.* The next question presented and discussed was as to certain claims presented by several firms of lawyers in different states of the union, audited and adjusted by the learned receiver, for services in defending actions against persons insured for accidents which might result in a liability covered by a policy issued

by the insolvent company. One of the terms of both classes of policies is this:

"If any legal proceedings are taken against the insured by any person or persons, or by the legal representatives of any person or persons, to enforce a claim or claims for damages against said insured, the company shall have the absolute conduct and control of defending against such proceedings, in the name and on behalf of the insured, and shall have the sole and exclusive control of such defence, with the right to compromise the same and to take such appeals, or other proceedings therein, as it shall deem best, the company assuming all costs and expenses of such defence and proceedings. But if the company shall offer to pay the insured the full amount for which it is liable in respect to such claim or claims, then it shall not be bound to defend in such proceedings, nor be liable for any costs or expenses which may be incurred therein."

Besides this provision there are found among the conditions printed on the back of the policy certain clauses regulating the exercise of the right of defence by the insurer and also by the insured, which it is not necessary to set out at length. Suffice it to say that the learned receiver was of the opinion that these clauses, in effect, cast upon the insolvent company the duty of defending actions brought against the insured, wherever such defence was at all warranted, and that in case of a failure of the insurer to make such defence the insured might make it at his own expense, and charge against the insurer, under the policy, the reasonable cost thereof.

Most of the claims of lawyers audited and adjusted by the receiver were for services rendered under the retainer of the insolvent corporation, before it went into the hands of the receiver, in defending such actions. The receiver, in adjusting those claims, has made abatements in several instances by reason of the fact that the damages recovered were much beyond the insurance, and hence the defence was as much for the benefit of the insured as for the benefit of the insurer. A small portion of the claims, as I understand, is for services rendered in other matters beside the mere defence of actions of the kind above referred to.

I think that the circumstance that the lawyers in such cases acted upon the retainer of the insolvent company and looked to

it primarily for pay does not vary the case so far as the insolvent company is concerned, but that their claims should be allowed precisely as if they had been paid by the insured, and that they should be put on the same basis as the policyholders. The services were all rendered in defence of the general fund and were for the benefit of the policyholders. The presumption is—and the learned receiver, from a very careful and elaborate examination of all their claims, is of the opinion—that they are all meritorious in that respect.

At the argument the idea was enforced with great vigor that they are strictly within the limits of the terms of the trust upon which the securities—which constitute the bulk of the assets of the company—were deposited with the commissioner of banking and insurance of this state. The trust was that the securities were deposited "for the protection and benefit of all the policyholders." And it was argued that defending the fund against claims, the allowance of which would deplete it, was strictly within the terms of that trust; and I am not sure that the position is not well taken. Under the policies it was not only the contractual duty of the corporation to defend those claims in all cases where there was reasonable ground for such defence, but it was also their duty, independent of that contract, to so defend; and I am inclined to think that the counsel fees, within reasonable limits, must be considered as a sort of salvage necessarily expended for the benefit of the fund.

*Third.* The third question arises in this wise: The statute of the State of Virginia requires any company like the present insolvent company, doing business in that state, to deposit a certain amount of securities with the treasurer thereof, for the benefit of all policyholders residing in that state, and the insolvent company under that statute deposited about $10,000 worth of securities with the Virginia state treasurer. About $12,500 of claims of Virginia policyholders were presented against this fund in the Virginia courts, and they have been paid forty-six per cent. of their claims thereout. The fund is not yet exhausted, and there may be something further coming to them from it. These Virginia policyholders have proven their demands here,

and claim a dividend on the balance of their claims after crediting the amount recovered from the special Virginia deposit.

The question is whether they are entitled to any dividend upon their claims until the other policyholders have been paid a dividend equal to the amount the Virginia claimants have received from this special Virginia fund.

. The question raised is a nice one, and not without its difficulties. The actual deficiency which will arise upon the Virginia claims after the Virginia assets have been entirely exhausted is not yet determined. The receiver does not propose to make a dividend covering all the assets in his hands. In fact, he has only realized on a part of the assets. The others are still *in specie*, and perfectly good, and are drawing interest.

For these reasons I think it best not to express any opinion at this time upon this question, but will advise a dividend of thirty-three and one-third per cent. upon all the claims, except those of Virginia residents, of policyholders, and claims of lawyers for service in defending suits against policyholders out of the funds received from the securities lodged with the commissioner of banking and insurance.

A state of things similar to that in Virginia exists in Alabama, and is subject to the same order.