STANDARD LIFE & ACCIDENT INSURANCE COMPANY, Respondent, v. BAMBRICK BROTHERS CONSTRUCTION COMPANY, Appellant.

St. Louis Court of Appeals. Submitted on Briefs January 10, 1912. Opinion Filed February 6, 1912.

1. **EMPLOYER'S LIABILITY INSURANCE: Action for Premium on Assigned Policy: Liability of Assignee: Sufficiency of Evidence.** In an action by an insurance company to recover the premium on an employer's liability policy which had been assigned to defendant by the person originally insured, evidence *held* to sustain a finding that plaintiff had assented to the assignment prior to the institution of the suit.

2. ————: ————: ————: ————. The very act of plaintiff in suing upon the assignment is in itself a recognition of its validity.

3. ———: **Nature.** A contract to indemnify an employer against. liability for personal injuries sustained by his employees is a contract of insurance.

4. ———: **Insurable Interest.** It is necessary that one taking out an employer's liability policy have an insurable interest in the subject-matter of the contract, and the insurable interest necessary to support such a contract is of the same nature as the interest necessary to support the ordinary contract of insurance.

5. **INSURANCE: Assignment of Policy: Effect.** An assignment of a policy with the insurer's consent constitutes a new contract between the insurer and the assignee, according to the terms of the policy.

6. **EMPLOYER'S LIABILITY INSURANCE: Action for Premium on Assigned Policy: Liability of Assignee.** Under an employer's liability policy, providing for payment of a premium based on percentages of wages paid, and an assignment of the policy on condition that the assignee should perform the obligation imposed upon the assignor under the policy, the assignee's liability for premiums is measurable by wages paid its employees, and not the assignor's, and hence the assignee is not chargeable on account of a premium due on the assignor's pay rolls prior to the date of the assignment.

7. ———: ———: ———. In such a case, the assignee having acquired the benefit of the policy for the unexpired term, is entitled to credit for the proportionate amount of a payment made on the premium by the assignor at the time the policy was taken out.

8. **APPELLATE PRACTICE: Correcting Erroneous Award of Damages.** Where plaintiff was clearly entitled to recover, but a recovery was allowed for too large an amount because of an erroneous theory of liability on certain items, and the finding of the referee, to whom the case was referred, clearly and accurately stated the amounts of the items, a new reference will not be ordered by the appellate court, but the judgment will be reversed and the cause remanded with directions to the trial court to ascertain the correct amount due and enter judgment accordingly.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

REVERSED AND REMANDED *(with directions).*

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

(1) The assignment of the policy was null and void, because no officer of the company assented to same. (2) If the assignment is valid the Bambrick Bros. Construction Company did not agree to pay a premium based on the compensation paid by *it* to *its* employees during the period of the policy, but it did thereby agree to pay a premium based on the compensation paid by the Bambrick-Bates Construction Company, to its employees during the period of the policy, and the Bambrick-Bates Construction Company had no employees from September 25, 1905, to July 21, 1906; and no compensation was paid to employees of the Bambrick-Bates Construction Company during said period.

*Merritt U. Hayden* for respondent.

(1) This court will not disturb the report and recommendation of the referee and the judgment of the trial court thereon, if there is substantial evidence in support thereof. Mining Co. v. McDermott, 109 Mo. App. 306; Reifschneider v. Beck, 148 Mo. App. 725; Grocery Co. v. Guaranty Co., 130 Mo. App. 135; Bader v. Lumber Co., 134 Mo. App. 135; Tufts v. Latshaw, 172 Mo. 359; Bank v. Donnell, 172 Mo. 384. (2) The assignment of the policy here sued on from the Bambrick-Bates Construction Company to appellant was valid for the following reasons: (A.) Respondent's managing agents, Atwood & Johnson, were authorized to solicit the insurance, in the first place. They collected the premium for this policy from the Bambrick-Bates Construction Company. The policy provided that it should not be binding until countersigned by a duly authorized representative of respondent. They countersigned the policy. They had authority to assent to the assignment of the policy to

appellant.  Wagaman v. Insurance Co., 110 Mo. App.
616; Shook v. Insurance Co., 154 Mo. App. 394; Thompson v. Insurance Co., 169 Mo. 12; Riley v. Insurance
Co., 117 Mo. App. 229; Rudd v. Insurance Co., 120
Mo. App. 1; Miller v. Insurance Co., 106 Mo. App. 205;
Insurance Co. v. Dunham, 117 Pa. St. 460.  (B.) These
agents likewise had authority to waive the provision
in the policy to the effect that no assignment of interest under the policy should bind the respondent unless its written consent were endorsed thereon by one
of its officers.  That provision was put in the policy
for the benefit of respondent and was one that could
be waived by its agents.  Rudd v. Insurance Co., 120
Mo. App. 1; Zinc Co. v. Ins. Corp., 144 Mo. App. 380;
Laundry Co. v. Insurance Co., 151 Mo. 90; Graham
v. Insurance Co., 110 Mo. App. 95; Ross-Langford v.
Insurance Co., 97 Mo. App. 79; Gorton v. Insurance
Co., 115 Mo. App. 69; Moffitt v. Insurance Co., 11 Ind.
App. 233; 2 Cooley's Briefs on Insurance, page 1071;
See authorities cited under subdivision A.  (C.) The
policy itself, by its express provisions, did not become
binding upon respondent until it was countersigned
by respondent's agents.  They were exclusively vested
with authority to perform the last act essential to the
validity of the contract between respondent and the
Bambrick-Bates Construction Company.  The legal
effect of the assignment of the policy to appellant was
that an entirely new contract was entered into between
respondent and appellant, the terms of the policy being the terms of the new contract, and if respondent's
agents were authorized to bind it in the first place by
entering into the contract with the Bambrick-Bates
Construction Company, beyond question respondent
is bound by the act of those same agents in assenting
to the new contract with appellant.  Ellis v. Insurance Co., 32 Fed. 646; In re Hamilton, 102 Fed. 683;
New v. Insurance Co., 5 Ind. App. 82; Moffitt v. Insurance Co., 11 Ind. App. 233; Wilson v. Hill, 3 Metcalf

(Mass.) 66; Guarantee Co. v. Railway, 52 Southern, 787; 2 Cooley's Briefs on Insurance, page 1064; Ins. Co. v. Glenn, 13 Ind. App. 365; Insurance Co. v. Mums, 120 Ind. 30; Bullman v. Insurance Co., 159 Mass. 118; Chemical Co. v. Insurance Co., 108 Fed. 451; Insurance Co. v. Allen, 13 Ky. Law Rep. 95; Fogg v. Insurance Co., 10 Cushing 337; Bayliss v. Insurance Co., 106 Mo. App. 684; Insurance Co. v. Dunham, 117 Pa. St. 460. (D.) The evidence shows that this assignment was executed in duplicate and one copy immediately forwarded by the agents to respondent and thereafter respondent never questioned the validity of the assignment. It is to be presumed, under these circumstances, that respondent fully ratified the act of its agents in assenting to said assignment. Moffitt v. Insurance Co., 11 Ind. App. 233; Breckenridge v. Insurance Co., 87 Mo. 62; Casualty Co. v. Mesker, 128 Mo. App. 183; Insurance Co. v. Dunham, 117 Pa. St. 460. (E.) Respondent accepted the benefits of the entire transaction, including this assignment, and is therefore estopped to deny the validity of the assignment, and it is the only party to the transaction in a position to assert that the provisions of the policy with respect to the assignment were not complied with. If respondent recognized the assignment as binding on it, appellant must do so. Appellant is estopped, after the expiration of the policy, to deny the validity of this assignment. Insurance Co. v. Rosenhein, 56 Mo. App. 27; Zinc Co. v. Accident Co., 144 Mo. App. 380; Shook v. Insurance Co., 154 Mo. App. 394; McIntyre v. Insurance Co., 142 Mo. App. 257; Thompson v. Insurance Co., 169 Mo. 12; Insurance Co. v. Dunham, 117 Pa. St. 460. (3) If the assignment of this policy to appellant was valid and binding alike upon both respondent and appellant, then the effect was to substitute appellant in place of the Bambrick-Bates Construction Company. Every obligation, imposed upon that company was, then, by virtue of this assign-

ment, imposed upon appellant. Appellant's obligations, with respect to premium and otherwise, are measured and defined by the original policy. They do not rest solely upon the language of the assignment. See authorities cited in support of point C; Webb v. Insurance Co., 134 Mo. App. 576.

REYNOLDS, P. J.—This action was instituted in the circuit court of the city of St. Louis by respondent, to collect a premium alleged by it to be due from appellant upon a policy of insurance, commonly called an employer's liability policy. The policy involved is claimed to have been issued on July 21, 1905, to the Bambrick-Bates Construction Company, and covered a period of one year from that date. It is claimed that it was afterwards, on September 25, 1905, assigned by the Bambrick-Bates Construction Company to the Bambrick Brothers Construction Company, and the action was originally brought against the two companies but was subsequently dismissed by plaintiff as to the Bambrick Bates Company.

The fourth amended petition, filed after the dismissal as to the Bambrick-Bates Construction Company, and upon which the case was tried, contained two counts. The first count, after setting out the fact of the issue and delivery of the policy to the Bambrick-Bates Construction Company, on the date and covering the period above stated, sets out that in applying for the policy and accepting it, the Bambrick-Bates Construction Company represented that the lines of business in which it was engaged and which were to be covered by the policy were those of operating a quarry or quarries and of stone crushing, including all occupations incident to those lines of business, and for the hazard of operating the quarry or quarries the Bambrick-Bates Construction Company agreed to pay to plaintiff a premium at the rate of one dollar and seventy-five cents for each $100 of wages paid to per-

sons employed by the Bambrick-Bates Construction Company in and about its quarry operations, and forty-two cents for each $100 of wages paid to persons employed by it in its stone crushing operations during the term of the policy, and that in the application, the Bambrick-Bates Construction Company estimated and represented that it would expend during the term for which the policy was to be in force, a total sum of $15,000 in wages, $8000 of which it was estimated that company would pay to persons employed in its quarry operations and $7000 to employees in its stone crushing operations. It is also averred that by a clause of the policy, it was agreed that if the compensation actually paid to such employees in the period covered, exceeded the sum estimated by the Bambrick-Bates Construction Company at the time the application for the policy was made, that that company would pay an additional premium at the rates above mentioned for each $100 of compensation actually paid in excess of the amounts so estimated.

It is further set out in this first count of the petition that on the basis estimated by the Bambrick-Bates Construction Company, the amount of premium due and which was paid by that company to plaintiff was $169.40. It is further charged that on the 25th of September, 1905, the policy was duly assigned by the Bambrick-Bates Construction Company to the Bambrick Brothers Construction Company, which assignment was accepted by plaintiff, and that by the terms of the assignment the Bambrick Brothers Construction Company promised and agreed to keep and perform all and every the obligations to be kept and performed under the policy by the Bambrick-Bates Construction Company. It is then charged in this first count that in the period from July 21, 1905, to September 25, 1905, the date of this alleged assignment, the Bambrick-Bates Construction Company had actually expended in wages to its employees engaged in

quarry operations $8000, on which sum the premium
of the policy mentioned, namely, one dollar and seven-
ty-five cents for each $100, would amount to $140, and
that during the same period the Bambrick-Bates Con-
struction Company had actually expended in wages
to its employees in the business of stone crushing, the
sum of $8500, on which sum the premium of the policy
at the rate mentioned, to-wit, forty-two cents for each
$100, would amount to thirty-five dollars and seventy
cents, making the total premium due on the policy
$175.60, leaving a difference between the premium
paid and the amount which should have been paid by
the Bambrick-Bates Construction Company of six dol-
lars and thirty cents, for which, in this first count,
plaintiff demanded judgment against the defendant,
Bambrick Brothers Construction Company.

The second count of the petition, repeating the
averments as to the issue of the policy and the fact
of its assignment on the 25th of September by the
Bambrick-Bates Construction Company to the Bam-
brick Brothers Construction Company, and averring
that prior to, or cotemporaneously with, the making of
the assignment of the policy, the Bambrick-Bates Con-
struction Company had sold and delivered to the Bam-
brick Brothers Construction Company, the business
covered by and under the policy, and from that date,
namely, the 25th of September, 1905, until the expiry
of the policy on the 21st of July, 1906, the Bambrick
Brothers Construction Company had conducted both
the quarry and stone crushing operations covered by
the policy, avers that during the period between the
25th of September, 1905, and ending on the 21st of
July, 1906, the defendant Bambrick Brothers Con-
struction Company actually expended in wages to its
employees in its business of operating its quarries, the
sum of $30,000, on which sum it is claimed there is due
plaintiff as premium on the policy at the rate hereto-
fore specified, namely, one dollar and seventy-five

·cents for each $100 thereof, the sum of $525, and that during the last mentioned period defendant actually expended in wages to its employees in the stone crushing operations the sum of $40,000, on which sum it is averred there is due plaintiff as premium for its policy at the rate of forty-two cents for each $100, the sum of $168, a total premium, as it is claimed, due plaintiff in the sum of $693. Judgment is demanded against the defendant for this amount with interest and costs.

The reply was a general denial.

The cause was sent to a referee and the testimony taken before him.

The assignment referred to, which was introduced and read in evidence, is as follows:

"Having sold and delivered to Bambrick Brothers Construction Company the business covered under the policy below referred to we hereby transfer and assign to the said Bambrick Brothers Construction Company, policy No. 43845 of the Standard Life and Accident Insurance Company, of Detroit, Michigan, dated July 21st, 1905. We and the said Bambrick Brothers Construction Company in accepting this assignment and as a condition of the said Standard Life and Accident Insurance Company's assenting hereto, promise and agree to keep and perform all and every the obligations on the part of the assured to be kept and performed as provided in the agreements and conditions under which said policy was issued.

Executed in duplicate this 25th day of September, 1905.

(Signed)    BAMBRICK-BATES CONST. CO.

By JOHN BAMBRICK, President.

Assignor.

BAMBRICK BROS. CONST. CO.

By JOHN BAMBRICK, Pres.

Assignee.

Assented to.

Standard Life and Accident Insurance Company,
By E. A. LEONARD, Secretary.

Atwood & Johnson, Managing Agents.

H. O. No. 29910.''

It was in evidence that the auditor of plaintiff, exercising the right of examination which the policy conferred, had, with the assent of the officers of defendant, made an examination of the pay-roll and books of the Bambrick-Bates Construction Company, which appear to have been in the office of the Bambrick Brothers Construction Company, and had also examined those of the Bambrick Brothers Construction Company, and from this examination, he testified, that commencing with July 21, 1905, and ending with September 25, 1905, the Bambrick-Bates Construction Company had expended for wages of employees in its quarry operations $6657.32, and for the same period that company had expended in wages for men employed as stone crushers $10,319.15. For the period from September 25, 1905, to July 21, 1906, this witness testified that his examination showed that defendant Bambrick Brothers Construction Company had expended as wages for its employees in the quarrying operations $27,467.37, and for the same period it had expended as wages for employees in its stone crushing operations $36,379.90. The policy was offered and admitted in evidence, the clause pertinent to this controversy being read in evidence and being as pleaded in the petition.

The defendant introduced no evidence but objected to the authority of the firm which had issued the policy and countersigned it to issue the policy, and also objected to the introduction in evidence of the assignment, on the ground that there was no proof of the acceptance or approval of that assignment by

the plaintiff company. These objections were overruled, defendant excepting.

The referee reported as his finding and conclusion, that the policy had been duly issued and delivered and was of the terms stated and that at the time of the issue of it, the Bambrick Brothers Construction Company had paid to plaintiff $169.40, this amount based upon the estimated amount of wages paid as shown by the estimate furnished by Bambrick-Bates Construction Company. He further finds that on the 25th of September, 1905, the Bambrick-Bates Construction Company assigned, in writing, the policy to the defendant Bambrick Brothers Construction Company, and that plaintiff company assented to this assignment. He also finds as a fact that the plaintiff had never questioned the validity of the execution of the policy and that plaintiff and both Construction Companies had treated it as having been properly executed, that the Bambrick-Bates Construction Company had paid the premium on the estimated amount and had later assigned the policy to the Bambrick Brothers Construction Company; that after the expiration of the policy the Bambrick Brothers Construction Company had acknowledged its existence and the acceptance of the assignment to it, and by and under the terms of that policy, gave a representative of plaintiff company access to its books and pay-rolls for the purpose of ascertaining the amount of wages paid by both companies. Objection having been made to the introduction of the policy on the ground that the contract was illegal and void as against public policy, the referee reported that he had overruled this contention on the authority of the decision of the Supreme Court of this state in the case of Breeden v. Frankford Marine Accident & Plate Glass Ins. Co., 220 Mo. 327, 119 S. W. 576. He further finds and reports that prior to the assignment of the policy the Bambrick-Bates Construction Company had paid to the em-

ployees engaged in quarrying $6657.32, and that defendant company, after the assignment, had paid to employees engaged in the same work the sum of $27,467.37, making the total of wages paid to quarrymen by both companies $34,124.69, on which he finds that under the terms of the policy plaintiff is entitled to receive as compensation for the whole period of the policy a total of $597.18 on that account. He further finds that there was paid by the Bambrick-Bates Construction Company prior to the assignment, wages to employees engaged in stone crushing $10,319.15, and by the defendant subsequent to the assignment to employees engaged in like work $36,379.90, in all a total of wages paid to employees of both companies engaged in stone crushing for the whole period of the policy, the sum of $46,699.05, on which, under the terms of the policy plaintiff is entitled to receive $196.14, making a total premium due for the whole period on both classes of laborers of $793.32. He further finds that on this amount the defendant is entitled to be credited with $169.40, the amount paid upon the delivery of the policy, leaving a balance due plaintiff of $623.92, for which amount he recommends judgment.

Exceptions were filed by the defendant to this report. These were overruled and the report confirmed, judgment being entered by the court in accordance therewith in favor of plaintiff and against defendant Bambrick Brothers Construction Company, for $623.92, with interest from September 29, 1907, at six per cent, a total of $738. From this judgment, after proper steps, defendant Bambrick Brothers Construction Company has duly appealed to this court.

Two points only are made by the learned counsel for appellant for a reversal. First, that the assignment of the policy was null and void because no officer of the plaintiff company assented to it. Second, "If the assignment is valid, the Bambrick Brothers Construction Company did not agree to pay a premium

based on the compensation paid by *it* to *its* employees during the period of the policy, but it did thereby agree to pay a premium based on the compensation paid by the Bambrick-Bates Construction Company, to its employees during the period of the policy, and the Bambrick-Bates Construction Company had no employees from September 25, 1905, to July 21, 1906; and no compensation was paid to employees of the Bambrick-Bates Construction Company during said period.'' (The italics are those of counsel.)

Taking up these points in their order, we say as to the first, that the referee found as a matter of fact that the policy had been duly assigned and that that assignment had been assented to by the plaintiff company prior to the institution of this action. We have read all the evidence in the case and are satisfied that this point is not well taken. The testimony was ample to sustain the finding of the referee on this. It may be further said that the very act of this plaintiff in suing upon this assignment is in itself a recognition of its validity.

The second point is also untenable. These contracts to indemnify an employer against liability for personal injuries suffered by his employees are regarded as contracts of insurance. [1 Cooley's Briefs on Insurance, pp. 8 and 88.] As in other contracts of insurance, ''the doctrine of the necessity of an insurable interest to support the contract of insurance is applicable to policies of the classes named to the same extent as it is in the case of ordinary insurance of property or lives. Furthermore, the interest necessary to support such contracts is of the same nature as the interest necessary to support the ordinary contract of insurance. Contracts not founded on such an interest would be void as wager contracts.'' [1 Cooley, supra, pp. 243, 782, 784.] We will call attention to this latter proposition again when we consider another phase of this case. ''An assignment of a pol-

icy of insurance with the consent of the company to a purchaser of the interest of the insured constitutes a new contract between the assignee and the company; the terms of the policy constituting the basis of the new contract." [2 Cooley, supra, pp. 1063, 1064.] In the case at bar this assignment of the policy went along with an absolute sale of the property of the Bambrick-Bates Construction Company. Mr. Cooley sustains the above proposition by abundant authority. Among those cited, we select a few cases. In Ellis v. Insurance Company of North America, 32 Fed. 646, Mr. Justice BREWER, then Judge BREWER, sitting in the circuit court of the Southern District of Iowa, has said (l. c. 650): "In one sense of the term you may say there is an assignment, but really there is substitution of a new party for the old, the creation of a new contract upon the same terms as the old, containing the same conditions, but operative only *in futuro,* and not subjecting the party doing the work to the burdens and penalties which had fallen on the assignor previous thereto under his contract for personal service. . . . When the purchaser buys the property, naturally the thought in his mind is insurance. It being his, and the old policy being dead, he looks for insurance. He finds a policy which had been in force, dead because of his purchase and cessation of the insurable interest in the assignor, yet which the insurance company is willing to have transferred to him."

The same principle is announced in Wilson v. Hill, 3 Metc. (Mass.) 66; Bullman v. North British, etc. Ins. Co., 159 Mass. 118, l. c. 122; Steen v. Niagara Fire Ins. Co., 89 N. Y. 315, l. c. 327; New v. The German Ins. Co. of Freeport, Ill., 5 Ind. App. 82, l. c. 85; Manchester Fire Assurance Co. v. Glenn, 13 Ind. App. 365, l. c. 368; The Continental Ins. Co. v. Munns, 120 Ind. 30, l. c. 33; City Fire Ins. Co. of Hartford v. Mark, 45 Ill. 482, l. c. 484; Ellis v. The Council Bluffs Insurance Co., 64 Iowa, 507, l. c. 511; Home Mutual Ins.

Co. v. Nichols, 72 S. W. 440 (Texas Civ. App.). That same rule has been recognized as prevailing in our state, as see Bayless v. Merchants' Town Mutual Ins. Co., 106 Mo. App. 684, 80 S. W. 289.

That this was a new contract and that such was the distinct understanding of the parties in the case at bar is evident by an examination of the assignment. We have quoted it in full. A consideration of it effectively disposes of the point made against it by the learned counsel for appellant. The paper distinctly sets out that the Bambrick-Bates Construction Company, having sold and delivered to the Bambrick Brothers Construction Company the business covered by the policy, it transfers and assigns to the latter company the policy. It further says in so many words, that the Bambrick Brothers Construction Company, "in accepting this assignment and as a condition of the said Standard Life & Accident Insurance Company's assenting hereto, promise and agree to keep and perform all and every the obligations on the part of the assured to be kept and performed as provided in the agreement and conditions under which said policy was issued." This is no agreement on the part of the Bambrick Brothers Construction Company to insure itself against injuries sustained by the Bambrick-Bates Construction Company's employees. Any such stipulation would have been void, it not appearing that the Bambrick Brothers Construction Company had any insurable interest in the employees of the Bambrick-Bates Construction Company. To put any such construction on it as within the intention of the parties or the ordinary terms of the instrument, would be an absurdity. The whole effect and meaning of this assignment is that the Bambrick Brothers Construction Company, from the date of the assignment to the expiry of the policy, stepped in and took the place of the Bambrick-Bates Construction Company with the insurer, not as to that company's employees but as to its

own, and agreed to pay the percentage according to its own pay rolls of its own employees from the date of the assignment to the expiry of the policy, exactly as the Bambrick-Bates Construction Company had before then contracted to pay for its own laborers, if it had continued its work at the quarries and crushing plants. In so far, then, as covers the fact of the making of the assignment, its approval by the plaintiff, the substitution of the one company for the other as the insured, and the consequent liability of the defendant for the named percentage on the amount of its pay rolls, there is no error in the finding of the referee or in the judgment of the court. ·

We are, however, compelled to reverse that judgment on another proposition in the case, a proposition not raised by either counsel, further than by general exceptions to the report of the referee, but which we cannot afford to overlook. This goes to the amount of the judgment.

Both the referee and the learned trial court appear to have fallen into the error of charging the Bambrick Brothers Construction Company, defendant here, not only with the amount of premiums due on that company's pay rolls, but with the amount of premium due on the pay rolls of employees of the Bambrick-Bates Construction Company prior to the date of the assignment. This is clearly an error. All that the Bambrick Brothers Construction Company is liable for is the percentage on the pay roll of laborers employed by it in the occupations specified in the policy on and after the date of the assignment. In no event can the Bambrick Brothers Construction Company be held for the default of the Bambrick-Bates Construction Company for underpayment of the amount of premium due on the basis of the pay rolls of the latter company. That was a default on the part of the Bambrick-Bates Construction Company and not on the part of this defendant, and the latter did not contract

to make good any default of its assignor. The principle here to be applied is announced and illustrated by Mr. Cooley, in vol. 1, p. 243, heretofore quoted, as well as by the Kansas City Court of Appeals in Bayless v. Insurance Co., supra. In the latter case, at page 688, Judge BROADDUS, speaking for that court holds that the change in ownership of personal property being a matter of frequent occurrence and when that is insured it being customary for the seller to transfer to the purchaser his policy, says: "It would be a hard rule to hold such purchaser and transferee liable for the delinquencies of the party originally insured." [To the same effect are the cases above cited, particularly that of Ellis v. Ins. Co., supra. See, also, 3 Cooley, supra, par. 9, p. 2676.] Having no insurable interest in the employees of the Bambrick-Bates Construction Company, this defendant could neither effect valid insurance against liability against their injuries, nor, effecting such insurance, could it recover in case of accidents suffered by those employees while in the employ of the Bambrick-Bates Construction Company. Hence there was no possible legal liability on the Bambrick Brothers Construction Company for anything connected with accidents to laborers, employees of the Bambrick-Bates Construction Company.

We are also compelled, as following this, to hold that the report and finding of the referee, affirmed by the trial court, is erroneous in offsetting against the amount of premium due by the defendant, the whole of the original premium paid by the Bambrick-Bates Construction Company. That finding might be correct if the Bambrick Brothers Construction Company could be held liable for the premium on the wages of the employees of its company as well as of the other company. But, as we have seen, that could not be. Hence the premium due on the Bambrick-Bates pay roll before the assignment is not within the terms of the as-

signment. While by the purchase, as it is sometimes called, of the insurance policy by the Bambrick Brothers Construction Company from the Bambrick-Bates Construction Company, the former acquired the benefit of the payment that had been made on the policy by the Bambrick-Bates Construction Company, it only acquired that *pro tanto,* that is for the unexpired term of the policy. As the Bambrick Brothers Construction Company acquired the benefit of the policy for the unexpired term, it acquired with it the proportionate amount of the premium that had been paid by its assignor. For this amount and no more, the Bambrick Brothers Construction Company is entitled to credit on the amount found to be due by it on account of its own pay rolls.

It will be noticed that in the first count of the petition, plaintiff offsets the total premium paid by Bambrick-Bates Construction Company against the amount actually due from that company on its pay rolls down to the date of the assignment. For the reasons here stated that is an error. That premium was to cover the whole term of the policy.

The judgment is reversed and the cause remanded with directions to the circuit court, having ascertained the exact amount and adding interest, to enter up judgment in accordance with this opinion. In view of the clearness of the report of the referee and his accurate statement of amounts, we do not think a new reference is necessary. *Nortoni* and *Caulfield, JJ.,* concur.