OCEAN ACCIDENT & GUARANTEE COR-
PORATION, Limited, v. SOUTHWEST-
ERN BELL TELEPHONE CO.*

No. 11220.

Circuit Court of Appeals, Eighth Circuit.

Jan. 3, 1939.

*Rehearing denied Jan. 31, 1939.

David A. Murphy, of Kansas City, Mo. (E. R. Adams, John T. Harding, R. C. Tucker, and John Murphy, all of Kansas City, Mo., on the brief), for appellant.

Walter A. Raymond, of Kansas City, Mo. (Fenton Hume, of Kansas City, Mo., on the brief), for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury in favor of appellee, plaintiff below, and against appellant, defendant below. For opinion of the trial court in ruling on motion for a new trial, see Southwestern Bell Telephone Co. v. Ocean Accident & Guarantee Corporation, Ltd., D.C., 22 F.Supp. 686.

The plaintiff predicated its cause of action upon an "Employers' Liability Policy" of insurance issued by appellant to the Kansas City Telephone Company. The policy was for a term of three years commencing November 16, 1924, and expiring November 16, 1927.

The material provisions of the policy are as follows:

"The Ocean Accident and Guarantee Corporation, Limited (Hereinafter called the Company) does hereby agree with the Assured named and described as such in the Declarations forming a part hereof, respecting accidental bodily injuries sustained by Assured's employees, including death at any time resulting therefrom, as follows:

"1. To Insure the Assured against loss by reason of the liability imposed by law upon the Assured for damages on account of such injuries, and to pay and satisfy judgments finally establishing Assured's liability in actions defended by the Company, all subject to the limits expressed in Paragraph 11 of the Declarations;

"2. To Investigate accidents involving such injuries, to negotiate all claims made as may be deemed expedient by the Company, and to defend suits for damages, even if groundless, brought on account of such injuries in the name and on behalf of the Assured, unless or until the Company shall elect to effect settlement thereof;

"3. To Pay (a) all costs taxed against the Assured in any legal proceeding defended by the Company according to the foregoing paragraph, and interest accruing up to the date of payment by the Company upon the Company's share of the judgment rendered in connection therewith, (b) all premium charges on attachment or appeal bonds required in such legal proceedings, (c) all expenses incurred by the Company for investigation, negotiation and defense; and

"4. To Reimburse the Assured for the expense incurred in providing such immediate surgical and medical relief as is imperative at the time of the accident.

\* \* \* \* \* \*

"The Assured shall not voluntarily assume any liability, nor incur any expense (other than for immediate surgical or medical relief), nor settle any claim, except at the Assured's own cost. The Assured shall not interfere in any negotiation for settlement, nor in any legal proceeding, but, whenever requested by the Company, and at the Company's expense, the Assured shall aid in securing information and evidence and the attendance of witnesses, and shall co-operate with the Company (except in a pecuniary way) in all matters which the Company may deem necessary in the defense of any suit or in the prosecution of any appeal."

\* \* \* \* \* \* .

"No assignment of interest under this policy shall be binding upon the Company unless such assignment is consented to by

endorsement hereto, signed by the Manager and Attorney at the City of New York, * * *."

"Declarations.

"1. Name of Assured Kansas City Telephone Company."

The plaintiff pleaded and relies upon two assignments of the policy. The first is a bill of sale dated January 22, 1927, by the terms of which the Kansas City Telephone Company sold, assigned and conveyed to the Southwestern Bell Telephone Company all of its property, including "4. All other property, rights and assets of whatsoever nature and description, real, personal or mixed, corporeal or incorporeal, legal or equitable, in possession or in expectancy, now owned by the party of the first part, whether in this conveyance specifically named or not."

It is not claimed that this bill of sale was submitted to, approved by, or consented to by the appellant company. The policy, however, with all other property of the insured, came into the possession of appellant; and sometime after February 7, 1927, there was attached the following duly executed assignment: "Subject to the consent of the Ocean Accident and Guarantee Corporation, Limited, the interest of the Kansas City Telephone Company in policy #EC-155240 is, for value received, hereby assigned as of January 22, 1927, to the Southwestern Bell Telephone Company, and from and after January 22, 1927, said policy shall, subject to such consent, apply only to those employees of the Southwestern Bell Telephone Company who are employed in connection with the plants and premises formerly owned by the Kansas City Telephone Company, and who shall be at the time of injury engaged principally in the business of operating, maintaining and extending the property located in the State of Missouri, acquired on said date by the Southwestern Bell Telephone Company from the Kansas City Telephone Company, including the business of furnishing local exchange telephone service by and through said property."

The appellant admits that this assignment was formally consented to by it subject to the agreements, conditions and declarations of the policy.

Three distinct causes of action are declared upon in the petition: (1) for attorney's fees and expenses incurred in successfully defending a suit brought by Joseph Schaum for personal injuries sustained by him on November 1, 1926; (2) for $500 paid in settlement of a suit against plaintiff by Cletta Morgan for a personal injury alleged to have occurred in March, 1926, and for attorney fees; and (3) for $500 paid to Nell Conroe in settlement of a suit against plaintiff for an injury sustained in September, 1926, and for attorney fees. The plaintiffs in the three cases were, at the time the injuries complained of occurred, employees of the Kansas City Telephone Company. Notice of the alleged injury to Schaum had been given to the insurance company prior to the date of the assignment; but Morgan and Conroe had not reported their alleged injuries to any of the parties before that date. When these suits, commenced two to five years after the date of the assignment, were instituted against the plaintiff, notice in conformity with the terms of the policy was given the defendant. The defendant refused to defend the suits and denied all liability on the sole ground that "our policy covers the Kansas City Telephone Company only and does not cover the Southwestern Bell Telephone Company." The cases were accordingly handled by the plaintiff's legal department, and this suit was brought to recover as damages the expenses so incurred.

Upon the trial the defendant moved for a directed verdict, which the court denied. The case was submitted to the jury and a verdict returned for $7,563.68 on the first count of the petition and $700 on each of the other two.

The grounds on which the defendant seeks reversal may be summarized as follows: (1) the motion for a directed verdict should have been sustained because there was no privity of contract between plaintiff and defendant; (2) the court erred in its rulings on the admissibility of evidence, especially on the issue of damages; and (3) the court erred in its charge to the jury particularly with reference to the value of the services of the attorneys.

The first ground for a directed verdict on the three counts or causes of action alleged in the petition was that "under the law and the evidence no privity of contract existed, or exists, between the plaintiff and defendant relative to the subject matter of said count(s) of said petition." This thought is amplified in the motion by the statement (1) that no interest in the policy was transferred to the plaintiff by the bill of sale of January 22, 1927, (2) that

the assignment to plaintiff in February, 1927, and to which defendant consented, was prospective in operation and did not apply to losses occurring before January 22, 1927, and (3) that it created a new contract between plaintiff and defendant with a new subject-matter.

Privity of contract denotes mutual or successive relationship to the same right of property or subject-matter, such as "personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of the fact." 1 Greene. Ev. § 535; Story, Eq.Jur. § 165; State v. Johnson, 123 Mo. 43, 27 S.W. 399; National Surety Corporation of New York v. Ellison, 8 Cir., 88 F.2d 399, 407; State v. City of St. Louis, 145 Mo. 551, 46 S.W. 981, 985; Peterson v. Parviainen, 174 Minn. 297, 219 N.W. 180, 183. To say in this case that privity of contract did not or does not exist between plaintiff and defendant is no more than to assert that plaintiff did not by means of either of said assignments succeed to the rights which the Kansas City Telephone Company had under the policy. It is conceded that that company had the right to protection against the liabilities for which the suit was brought and that an obligation rested upon defendant under the policy to furnish such protection.

The only question for consideration under the first contention, therefore, relates to the validity of the assignments. If either of these assignments constituted a valid conveyance of the policy and established between the grantor and grantee the true relationship of assignor and assignee, then by the same token there came into existence at the same time and by the same means the relationship of insurer and insured between plaintiff and defendant and privity of contract existed.

As to the assignment made in February, 1927, no importance seems to be attached. While some emphasis is placed upon it by counsel in argument, the court made no reference to it in his instructions to the jury, and he was not requested to do so. It is clear that this assignment, made with the consent of the defendant, constituted a new contract with plaintiff operating only in futuro. It did not relate back to liabilities arising prior to January 22, 1927. Standard Life & Acc. Ins. Co. v. Bambrick Bros. Const. Co., 163 Mo.App. 504, 143 S.W. 845, 848; Rendelman v. Lev-

itt, Mo.App., 24 S.W.2d 211; Northwestern Nat. Ins. Co. v. McFarlane, 9 Cir., 50 F. 2d 539, 540; Wilms v. New Hampshire Fire Ins. Co., 194 Mich. 656, 161 N.W. 940; Bayless v. Merchants' Town Mutual Ins. Co., 106 Mo.App. 684, 80 S.W. 289.

Upon the trial reliance was placed entirely upon the effect of the bill of sale of January 22, 1927. That instrument purported to convey to plaintiff all the "rights" of the Kansas City Telephone Company then owned by it; and the lower court held that it did effect an assignment of the right to protection against the liabilities sued upon. Whether or not it did is the important question on this appeal.

The defendant maintains that the bill of sale of January 22, 1927, is not a valid assignment (1) for the reason that a policy of liability insurance is not assignable without the consent of the insurer because it is a personal contract; and (2) for the reason that the policy contains an express prohibition against assignment without consent of the defendant.

It is generally true that an executory contract in which the personal character of one of the parties is an important element is not assignable without the consent of the parties. Delaware County v. Diebold Safe & Lock Company, 133 U.S. 473, 10 S.Ct. 399, 33 L.Ed. 674; Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U.S. 379, 8 S.Ct. 1308, 32 L.Ed. 246; Rendelman v. Levitt, Mo.App., 24 S.W.2d 211. This rule has been applied to a contract for the construction of a building. Burck v. Taylor, 152 U.S. 634, 651, 14 S. Ct. 696, 38 L.Ed. 578. It applies to insurance against loss by theft, Ginsburg v. Bull Dog Auto Fire Ins. Ass'n, 328 Ill. 571, 160 N.E. 145, 56 A.L.R. 1387; to fire insurance policies and to liability insurance policies. Rendelman v. Levitt, supra. But generally, again, after the event occurs giving rise to the liability the reason for the rule disappears and the cause of action arising under the policy is assignable. Maryland Casualty Co. of Baltimore, Maryland v. Omaha Electric Light & Power Co., 8 Cir., 157 F. 514. It is conceded that the policy in suit is a contract of indemnity against liability rather than a contract of indemnity against loss. There is no doubt, therefore, that the liability of the defendant arose immediately upon the happening of the accidents resulting in the injuries to the employees, Schaum, Morgan and Conroe. Conqueror Zinc & Lead Co. v. Aetna

Life Ins. Co., 152 Mo.App. 332, 133 S.W. 156; Wehrhahn v. Ft. Dearborn Casualty Underwriters, 221 Mo.App. 230, 1 S.W.2d 242; Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7, 12; Spann v. Commercial Standard Ins. Co. of Dallas, Texas, 8 Cir., 82 F.2d 593; American Automobile Ins. Co. v. Cone, Tex.Civ.App., 257 S.W. 961.

By the terms of the policy in this case the defendant contends the personal relation between the insurer and the insured did not come to an end upon the happening of the accident and the attaching of liability. The policy provided for the cooperation of the Kansas City Telephone Company and of no other party. The difficulty with defendant's position on this point is that the cooperation clause is a condition subsequent, breach of which constitutes matter of defense which the insurer must plead and prove. Western Casualty & Surety Co. v. Weimar, 9 Cir., 96 F.2d 635; Houssels v. Jacobs, 178 Mo. 579, 77 S.W. 857; Finkle v. Western Automobile Ins. Co., 224 Mo.App. 285, 26 S.W.2d 843. Defendant failed to plead any breach of this clause, but it contends that cooperation was made a personal element of the contract and, therefore, does not come within the rule that it is a condition subsequent. This is a petitio principii, because if there was a valid assignment of rights under the contract the plaintiff stands in the shoes of the Kansas City Telephone Company as the insured and is entitled to the same protection under the policy as would its assignor. The injuries to the employees having occurred before the attempted assignment was made the personal element would not affect the validity of the assignment if there were no other defect therein.

Defendant's next contention is that the policy is not assignable and that the bill of sale did not effect an assignment because the policy expressly prohibits an assignment without the consent of the defendant. Upon this question plaintiff relies upon the decision of this court in the case of Maryland Casualty Co. of Baltimore, Maryland v. Omaha Electric Light & Power Co., supra. In that case the appellee brought suit as plaintiff against appellant in the district court upon an employer's indemnity contract issued by the defendant to plaintiff's assignor. Before the assignment and while the policy was in full force and effect one Dent, an employee of the assignor, was accidentally injured and died. His administratrix brought suit against the assignor and obtained judgment before the date of the assignment. The judgment was paid by the assignor and its claim against the defendant casualty company was assigned to the plaintiff. The policy contained a provision prohibiting an assignment without the consent of the insurer. The plaintiff demanded reimbursement and the casualty company denied liability (1) because its contract was not with the plaintiff but only with the assignor, and (2) because it had not consented to the assignment. The court held the casualty company liable notwithstanding the provision against assignments without consent of the insurer, saying "The assignment in question was made after the assured sustained the loss and after it had been adjudged to be a legal liability against it. Dent had been injured. His administratrix had instituted suit and had prosecuted it to final judgment against the assured before the latter transferred its claim against the insurer for reimbursement, to the plaintiff. At that time the term of the policy had expired, and the character of the assured for integrity and prudence, on the strength of which the insurer might have relied in making its contract, could no longer affect its liability. The recognized reasons for the prohibition of assignments without the consent of the insurer had ceased. Its liability had become fixed, and like any other chose in action was assignable regardless of the conditions of the policy in question. This is settled by the great weight of authority. Beach on Law of Insurance, vol. 2, § 1114; May on Insurance, § 386; Dogge v. Northwestern Nat. Ins. Co., 49 Wis. 501, 5 N.W. 889; Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N.W. 303; Combs v. Shrewsbury Mut. Fire Co., 32 N.J.Eq. 512; Archer v. Merchants' & Mfgrs.' Ins. Co., 43 Mo. 434; Nease v. Aetna Ins. Co., 32 W.Va. 283, 9 S.E. 233; Aultman v. McConnell (C.C.) 34 F. 724. In Wood on Fire Insurance, vol. 2, § 361, the doctrine is stated thus: 'Where the policy prohibits an assignment, an assignment without the insurer's consent invalidates it, but, in the absence of such a condition, the validity of the policy is not affected thereby, but still remains operative as to the assured; nor does an assignment after a loss has transpired invalidate it. In such case the insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it

may be transferred or assigned like any other debt. After a loss the delectus personæ no longer becomes material, and even though the policy prohibits such an assignment, and provides that if so assigned the policy shall be void, it is held that such prohibition is void, as the insurer cannot restrict the assignment of a debt. The reasons that induce the restrictive clause have no existence or application after the risk has ceased." 157 F. 516.

It is claimed that case is distinguishable from the case at bar on its facts. In that case the liability had been liquidated and reduced to judgment before the assignment was made. That was not true in the present case. While that difference between the two cases exists, we do not think they are distinguishable on principle.

■ The principle on which the courts hold that an assignment of a right under a policy prohibiting assignment may be made is that such an assignment is not the assignment of the policy itself (because the parties have contracted otherwise), but it is the assignment of a claim, or debt, or chose in action. The rule is stated in 2 May on Insurance, § 386, as follows: "An assignment after loss is not the assignment of the policy, but the assignment of a claim or debt—a chose in action. * * * An assignment after loss does not violate the clause in the policy forbidding a transfer even if the clause reads before or after loss. The reason of the restriction is, that the company might be willing to write a risk for one person of known habits and character and not for another person of less integrity and prudence, but after loss this reason no longer exists."

The rule is stated in similar language in 26 C.J. 447. The principle has been applied in Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N.W. 303; Carroll v. Charter Oak Ins. Co., 38 Barb.,N.Y., 402; Alkan v. New Hampshire Ins. Co., 53 Wis. 136, 10 N.W. 91; Ginsburg v. Bull Dog Auto Fire Ins. Ass'n, supra, and many others.

The question to be determined is when the "cause of action" arose, whether at the time the accident occurred resulting in damage or after the amount of the loss was liquidated and reduced to judgment against the insured. If it arose at the time of the accident it was assignable notwithstanding the prohibition in the policy against assignments, otherwise it was not. The language of the policy is that the defendant obligated itself "to insure the assured against loss by reason of the liability imposed by law upon the assured for damages on account of such (bodily) injuries," etc. It is argued that the insured sustained no loss at the time the injury to the employee occurred. In 33 C.J. 7 the word "loss" is defined as follows: "'Loss' in insurance parlance is the pecuniary injury resulting from the occurrence of the contingency insured against, whether that contingency is (1) the death, disability, or sickness of the person insured, or (2) the destruction of, or injury to, the property insured, or (3) the legal liability to third persons to which insured has been subjected by specified events, or (4) any other contingency covered by the policy. It is commonly an injury or diminution of value within the limits provided in a policy, or the sum payable on that account."

■ The Missouri rule, supported by sound reason and apparently by the weight of authority, is that, under a liability policy such as the one under consideration, the liability, the loss and the cause of action arise simultaneously with the happening of the accidental injury to the employee. In Century Realty Co. v. Frankfort Marine, Accident & Plate Glass Ins. Co. et al., 179 Mo.App. 123, 161 S.W. 624, 630, the court, having under consideration a policy similar to the one in the instant case, said: "the right of action of the assured did not depend upon judgment first being rendered against it and payment made by it thereof, but that its right to the indemnity accrued when the accident occurred for which it was liable." In Wehrhahn v. Ft. Dearborn Casualty Underwriters, 221 Mo.App. 230, 1 S.W.2d 242, 244, the court adopted the language supra in the Century Realty Company Case. In Maryland Casualty Co. v. Peppard, 53 Okl. 515, 157 P. 106, L.R.A.1916E, 597, the Supreme Court of Oklahoma held under a similar policy that "the cause of action is complete when the liability attaches." [page 108.] The fact that the loss does not "mature" until final judgment against the insured is entered is not material, "for an assured is not protected against loss if he has to pay a judgment before he can recover against the insurer." Miller v. Collins, 328 Mo. 313, 40 S.W.2d 1062, 1065. See also Nat. City Bank v. Nat. Security Co., 6 Cir., 58 F.2d 7; Butler Bros. v. American Fidelity Co., 120 Minn. 157, 165, 139 N.W. 355, 44 L.R.A.,N.S., 609; Ross v. American Em-

ployers' Liability Ins. Co., 56 N.J.Eq. 41, 38 A. 22. In the Ross Case Pitney, V. C., afterwards Mr. Justice Pitney, speaking for the court, explained the reason for the rule thus [page 23]: "The recovery of the judgment against the insured by the injured party is not the injury against which the insurer insures him, but it is the liability for the consequences of the accident against which he is insured, and of which liability the judgment is a mere test or mode of proof. In fact, the recovery of the judgment is a mere mode by which the insured proves to the insurer that the intrinsic character of the accident was such that he was liable for the consequences of it. In this respect the judgment resembles the proof of loss to be furnished to an ordinary insurer against fire or shipwreck before action brought, or proof of death in case of life insurance. These are usually prerequisites to liability to action, but do not constitute the cause of action. And in the case of a judgment against the party insured under one of these policies for damages for the result of an accident, the liability, though legally fixed at that time, relates back to the accident itself. In contemplation of law the insured either was or was not, from the first, liable for the consequence of the accident; and the presumption is that the result of an investigation of the facts was never doubtful from the first, and always sure to result according to the actual fact. So that the recovery of the judgment cannot be held or treated in the law as a contingency which may or may not happen, but a mere judicial ascertainment of the intrinsic character of the occurrence which determined the liability of the insured."

We conclude that the bill of sale dated January 22, 1927, conveyed to the plaintiff the right to the protection of the defendant against liability on account of injuries to Schaum, Morgan and Conroe occurring before the date of the conveyance but while the policy was in force; and that such right was an assignable chose in action notwithstanding the prohibition clause in the policy. The lower court, therefore, did not err in overruling the defendant's motion for a directed verdict.

The court erred, however, in ruling on the admission of testimony. Plaintiff in its petition demanded expenses and attorney fees incurred in defending the Schaum case and the amount paid in set-

tlement and for expenses and attorney fees in the other two cases. Plaintiff has offices in Kansas City and St. Louis and employs its own attorneys on salaries. It furnishes some of them office space with office fixtures, library, supplies, clerks, and stenographers. To prove the amount of its damages it introduced the testimony of V. W. McMahill, its statistics supervisor. He prepared a tabulated study of plaintiff's legal department expenses incurred in handling the Schaum case during the years 1930 to 1934, inclusive. This study was introduced in evidence as plaintiff's exhibit 48 over the objection of defendant's counsel. The objection was in substance that it contained items which could not enter into any estimate of the expense in the case; that it was based upon guesswork; and because it was incompetent, irrelevant and immaterial. Exhibit 48 is as follows:

| Expense | | Total |
|---|---|---|
| Attorneys' Salaries | | |
| Arthur S. Brewster | $ 202.80 | |
| S. L. Harris | 950.62 | |
| John Mohler | 1,446.22 | |
| | | $2,599.64 |
| Office Expense | | |
| Salaries of Office Force | 890.76 | |
| Miscellaneous Office Expense | | |
| Postage, Prtg., Stationery, House Service, Furniture Expense, Library and Office Supplies | 904.25 | |
| | | 1,795.01 |
| Rents | | 770.93 |
| General Counsel | | |
| Salary and Office Expense | | 841.34 |
| Other Items | | |
| Bonding, Abstracts, Briefs, Examination, Transcripts, Court Costs, etc. | | 1,556.76 |
| Grand total | | $7,563.68 |

The witness testified that the figures in the exhibit are based upon the time furnished him by the lawyers who worked on the case. Salaries were determined on a working day unit based upon what the payroll of the plaintiff showed their salaries to be. Salaries of office force and office expense were allocated to the account on the basis of the number of days the lawyers worked whether the stenographers and clerks worked upon the Schaum case or not. The whole expense of operating the office including postage, house service, furniture, library, and supplies, were allocated in the same way. The same is true of rents. No testimony was introduced to show whether the plaintiff paid rent or not or what would be a reasonable charge for rental. There was no competent evidence

as to the reasonable value of the "office expense" in the sum of $890.76 nor of "miscellaneous office expense" in the sum of $904.25. Without such evidence the estimate was a mere guess. To find the amount paid for attorney fees the witness testified: "I took the total salaries for the office force in the legal department and divided those by the number of attorney's working days in the office, including other attorneys besides those working on this case. That gave me an average cost for an attorney's working day, as all of the office was in readiness to serve them. I determined that average cost per day, multiplied it by the number of days they spent on these cases." It was shown that the salaries of attorneys ranged from $200 a month to $8,800 a year during the period covered by the study. John Mohler, a young attorney in the office, did most of the work on the Schaum case. His time was estimated at 111 days, for which, by the system used, his salary for that time was charged against plaintiff in the amount of $1,446.22. Actually he was paid but a relatively small part of this sum. His salary during the period covered by the study ranged from $200 to less than $350 a month. Harris drawing an average salary of about $8,000 a year estimated that he worked about 30 days on the case. The salary actually paid to him for that amount of work was less than $700. On exhibit 48 his allowance was $950.62. Clearly exhibit 48 does not reflect the actual expense of plaintiff incurred in the defense of the Schaum case, and it, for that reason, had no evidential value. It should have been excluded.

■ Paul V. Barnett, an experienced lawyer, was called to testify as an expert as to a reasonable attorney fee. A hypothetical question, based upon the data in exhibit 48, was propounded to him, and he was asked what in his opinion, assuming the facts thus outlined to be true, would be a reasonable attorneys' fee in the Schaum case. His answer was: "I would say that the reasonable value of the legal services would be just exactly what those figures would add up to." The answer is plainly based upon the figures in exhibit 48, and was consequently misleading and without probative value. The objection to the question should have been sustained.

The court directed the jury to return a verdict for the plaintiff and against the defendant. In so doing he instructed them to accept as established the item of expenses, listed on exhibit 48 as "Court Costs, etc.," in the sum of $1,556.76. As to a reasonable attorney's fee in the Schaum case, the court, among other things, said: "the plaintiff's contention is that the reasonable value of its services in the Schaum case, making the defense was $6,000.00 or approximately $6,000.00, whereas the defendant says that the reasonable value was $1250.00. Now, if the testimony should preponderate in favor of the plaintiff, that is the testimony as to the $6,000.00 would seem more reasonable and more convincing and more satisfying to your minds, then it would be your duty to find in accordance with the contention of the plaintiff. If, on the other hand, the testimony of the defendant on the question of the reasonableness of the fees where the witness said that it was $1250.00 to $1500.00, then it would be your duty, if that evidence should be more reasonable and more convincing and more satisfying to your minds, that that should be the amount you should allow in that case, * * *"

Plaintiff contends that in so instructing the court invaded the province of the jury; that the jury was not bound to accept either of these figures, but were at liberty to find the reasonable value of the fees in such an amount as the jury might find from all the evidence the plaintiff was entitled to.

■ We are not disposed to consider this alleged error of the court for the reason that no exception was taken at the trial to the instruction on the ground now urged. The form of the instruction is not to be commended, but when considered in connection with the instructions as a whole can not be said to be so erroneous as to amount to a manifest miscarriage of justice. In this condition of the record we can not consider an objection made in this court for the first time. Fricke v. General Accident, Fire & Life Assur. Corp., 8 Cir., 59 F.2d 563. "The general rule is that a question of law which was not presented to nor passed upon by the trial court cannot be raised on appeal." United States v. Bollman, 8 Cir., 81 F.2d 1009, 1010; Trapp v. Metropolitan Life Ins. Co., 8 Cir., 70 F.2d 976, 981; Virtue v. Creamery Package Co., 227 U.S. 8, 38, 39, 33 S.Ct. 202, 57 L.Ed. 393.

Other assignments of error have been discussed in the briefs, but they are not substantial. We therefore pass them by.

For the errors pointed out the judgment appealed from is reversed and the case remanded with instructions to grant a new trial.

Reversed.