CENTURY REALTY COMPANY, Respondent, v. FRANKFORT MARINE ACCIDENT AND PLATE GLASS INSURANCE COMPANY and TRAVELERS INSURANCE COMPANY, Defendants; FRANKFORT MARINE, ACCIDENT AND PLATE GLASS INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 5, 1913. Opinion Filed December 2, 1913.

1. **LIABILITY INSURANCE: Policy Construed: Maximum Liability: Interest and Costs.** A policy of insurance indemnified insured against loss arising from legal liability for damages on account of bodily injury suffered by any person as a result of an accident happening on the premises of insured, but provided that insurer's liability should in no case exceed $5000. Subsequent clauses of the policy provided that, in case legal proceedings were taken on a claim against insured, the insurer should, at its own cost, undertake the defense of such proceedings, and should have entire control of such defense, but if it should offer to pay insured the full amount for which it is liable, it should not be bound to defend, nor be liable for any costs or expenses which insured might incur in defending, and that insured should not, except at his own cost, settle any claim nor incur any expenses without the consent of insurer. A judgment against insured in the amount of $5000, for injuries covered by the policy, was affirmed by the appellate court, and insured paid the amount, plus interest and costs. Insurer conducted the defense of the case and caused the appeal to be taken. *Held,* that, under the terms of the policy, insured's right of action did not depend upon a judgment being first rendered against it in the personal injury action, but that its right to indemnity accrued when the accident occurred, and insurer having conducted the defense and caused the appeal to be taken, was liable for court costs and interest on the judg-

ment, under the provision that it should, "at its own cost, undertake the defense," notwithstanding these items, added to the amount of the judgment, exceeded the amount of the stipulated maximum liability; interest being the compensation paid by a debtor for the detention of the debt, and insurer having delayed the payment, interest must be considered as part of the costs and expenses of the litigation.

2. **INSURANCE: Construction of Policy.** The terms and conditions of an insurance policy, if ambiguous or of doubtful meaning, are to be construed most strongly against insurer.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*Seddon & Holland* for appellant.

The court erred in giving the peremptory instruction to the jury to find a verdict in favor of plaintiff and against defendant, Frankfort Insurance Company, in the sum of $6753.40 with interest from June 25, 1910. (a) Because the policy of the Frankfort Insurance Company was a contract of indemnity against loss and the Frankfort Insurance Company was not liable to the Century Realty Company in any amount until the Century Realty Company sustained a loss. But when such loss was sustained, the limit of liability of the Frankfort Company was $5000, the amount specifically mentioned as the limit in said policy. Authorities under headings b and c infra. (b) The special agreement under which the Frankfort Insurance Company agreed to defend suits at its own cost did not impose any liability upon the Frankfort Company to pay interest on the judgment in excess of the limit of the policy, to-wit, $5000. Conqueror v. Aetna Ins. Co., 152 Mo. 332; Maryland Casualty Co. v. Omaha Electric L. & P. Co., 157 Fed. 514; Finley v. U. S. Casualty Co., 113 Tenn. 592; Davison v. Maryland Casualty Co., 197 Mass. 166; Puget Sound Improve-

ment Co. v. Frankfort Ins. Co., 52 Wash. 121; Frye v. Gas & Electric Co., 97 Me. 241; Henderson v. Maryland Casualty Co., 29 Pa. St. 328. (c) Because the special agreement under which the Frankfort Company agreed to defend suits at "its own cost" did not impose upon said company any obligation to pay court costs incurred in any proceeding of an injured party against Century Realty Company. Munro v. Maryland Casualty Co., 96 N. Y. Sup. 205; National & Providence Mills v. Frankfort Insurance Co., 28 R. I. 126.

*Watts, Gentry & Lee* for Travelers Insurance Company.

*Dawson & Garvin* and *Leonard Wilcox* for respondent.

(1) The Frankfort Company is liable for the interest on the amount of the verdict, viz., $5000, from the date of the verdict, as a matter of contract, but if not then, as a matter of substantive law. Insurance Co. v. Gas Light Co., 150 Ky. 132; Saratoga T. R. Co. v. Ins. Co., 128 N. Y. Sup. 825; Creem v. Fidelity Co., 126 N. Y. Sup. 557; Cudahy, Etc., Co. v. Casualty Co., 132 Fed. 623; Lumber Co. v. Fidelity Co., 63 Minn. 293; Sanders v. Frankfort Ins. Co., 72 N. H. 485, 492; Rumford, Ets., Co. v. Fidelity Co., 92 Me. 574; Mining Co. v. Casualty Co., 143 Mo. App. 563; Saratoga, Etc., Co. v. Ins. Co., 128 N. Y. Sup. 828. (2) The Frankfort Company is liable for the costs of the court paid by plaintiff on execution. Zinc Co. v. Ins. Co., 152 Mo. App. 339; Maryland, Etc., Co. v. Omaha, Etc., Co., 157 Fed. 514; Myton v. Fidelity Co., 117 Mo. App. 452; Mining Co. v. Casualty Co., 143 Mo. App. 563; Cudahy, Etc., Co. v. Casualty Co., 132 Fed. 623; Tel. Co. v. Ins. Co,, 121 N. Y. Sup. 565; Brewster v. Surety Co., 130 N. Y. Sup. 439; Mandell v. Fidelity Co., 170 Mass. 178. (3) There being in the Frankfort policy no pro-

vision like that numbered 14 in the Travelers' (see Abs., p. 45), the promise of the Frankfort was to indemnify when liability was established by judgment, not to indemnify for a loss actually sustained and paid after a trial resulting in a judgment. Saratoga, Etc., Ins. Co., 128 N. Y. Supp. 825, and other authorities under point I, *supra*. (4) The policy must be construed most strongly against the assured. Grocery Co. v. Guaranty Co., 130 Mo. App. 429; Mining Co. v. Casualty Co., 143 Mo. App. 563. (5) The words "at its own cost" in warranty No. 3 must have the same meaning as the same words used in warranty No. 4, where the word "cost" necessarily includes interest on the verdict; accruing pending appeal, and court costs. (6) If the Frankfort Company is not liable for the interest and court costs, or either of them, the Traveler's Company is liable under its policy, as a part of the "loss". Worsted Mills v. Ins. Co., 28 R. I. 126. (7) The order sustaining the motion for a new trial and the subsequent appeal did not vacate the judgment of 1906. They merely suspended it. Lewis v. Railroad, 59 Mo. 495; Crawford v. Railroad, 171 Mo. 82; Maryland, Etc., Co. v. Omaha, Etc., Co., 157 Fed. 515.

STATEMENT.—On April 29, 1903, one May Travis Cooper sustained injuries from an accident in a passenger elevator located in the Century Building in the city of St. Louis, the elevator owned and operated by the Century Realty Company. She instituted action against that company to recover her damages, placing the amount at $25,000. The cause came on for trial and, on January 12, 1906, resulted in a verdict for her in the sum of $5000, judgment following on that day for that amount and costs, the judgment to bear interest at the rate of 6 per cent per annum from that date. On motion for a new trial, filed by the Century Realty Company, defendant in that case, respondent here, the circuit court set aside the verdict and judg-

ment and ordered a new trial. From this May Travis Cooper appealed to the Supreme Court. That court, on December 23, 1909, set aside the order of the circuit court granting a new trial and reversed the judgment with directions to the circuit court to reinstate the judgment as of date January 12, 1906, the judgment to bear interest from that date. [See Cooper v. Century Realty Co., 224 Mo. 709, 123 S. W. 848.] The mandate of the Supreme Court was thereafter filed in the circuit court, and on January 5, 1910, that court entered up judgment in favor of May Travis Cooper and against the Century Realty Company for $5000, as of date January 12, 1906, that amount to bear interest at 6 per cent from that date, and also for costs and charges therein expended. Execution issued on this judgment, under which property of the Century Realty Company having been levied upon and advertised for sale, the Century Realty Company, on June 25, 1910, paid in satisfaction of the judgment the sum of $6753.40, that amount made up of the $5000 damages, $1337.50 interest accruing from January 12, 1906, and $415.90 for court costs.

At the time the accident above referred to happened, the Century Realty Company held policies in two companies, both policies having first been issued in the name of the Century Building Company and others named, payable to them, "as their interests might appear," but afterwards and before the happening of the accident, the Century Realty Company was substituted as the assured in place of the Century Building Company. Each of these policies covered the freight and passenger elevators situated in the building then owned by the Century Building Company, later by the Century Realty Company. For convenience and brevity, in speaking of the insured, we will designate it either as the Century Company, or as the Realty Company, although in the policies the former name, Century Building Company, is in fact

used. It is conceded that the accident happened to May Travis Cooper while a passenger in one of the passenger elevators.

The policy issued by the Frankfort Marine Accident & Plate Glass Insurance Company, of Frankfort-on-the-Main, Germany, hereinafter called the Frankfort Company, being the appellant herein, is designated "General Liability Policy." By it that company, in consideration of a premium stated, agreed to indemnify the Century Company "against loss arising from legal liability for damages on account of bodily injury or death suffered by any person or persons whomsoever resulting from any and every accident of whatsoever nature of cause happening in, upon, or about the premises of the assured, or happening in, upon or about any of the seven passenger elevator or freight elevators, . . . or the machinery and appliances connected therewith and together comprising the elevator service, . . . but the liability of the company in respect to any one person suffering injury or death shall in no case exceed the sum of $5000, nor shall the total liability of the company in respect to any one accident resulting in injury to or the death of several persons in any event exceed the sum of $10,000." It is expressly warranted and agreed (1) . . . (2) That upon the occurrence of an accident, whether any claim be made in respect thereof or not, the assured shall give immediate notice in writing of the accident to the company and shall likewise give immediate notice of any legal proceedings instituted to enforce such claim.

"(3). That if any legal proceedings are taken to enforce a claim against the assured, covered by this policy, the company shall, *at its own cost,* undertake the defense of such legal proceedings in the name and on behalf of the assured and shall have the entire control of such defense. But if the company shall offer to pay to the assured the full amount for which

the company is liable in respect to the claim sought to be enforced, it shall not be bound to defend any legal proceedings *nor be liable for any costs or expenses which the assured may incur in defending the same.* The assured at all times shall, under the direction of the company, render all reasonable and necessary assistance to enable the company to effect settlements or to properly conduct a defense or to prosecute an appeal.

"(4) That the company may undertake *at its own cost* the settlement of any claim, duly reported to it as before provided, and the assured shall not, except at *his (sic) own cost,* settle any claim nor incur *any expense* without the consent of the company thereto previously given in writing; provided however that such immediate medical and surgical relief to the injured may be furnished as may be imperative at the time of the accident and reasonable expenses thus incurred shall be deemed a part of the liability of the company." (Italics ours.)

The policy of the Frankfort Company was dated June 7, 1902, was for a term of one year but was extended June 18, 1902, for a term of twelve months, the accident occurring within this second period.

The policy issued by the Travelers Insurance Company, of Hartford, Conn., hereinafter referred as the Travelers, or Travelers Insurance Company, in consideration of premiums stated, agreed to indemnify the Century Company for a period of three years, beginning on the 11th of June, 1902, "against loss from common law or statute liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered within the period of this policy, by any person or persons, while in the car of the elevator mentioned in said application, or in the elevator well or hoistway of same, or while entering upon or alighting from the car," and it is set out in the policy that,

"in consideration of the rate of premium at which this policy is issued, it is hereby understood and agreed that other like and prior insurance shall be maintained by the assured in some other company, with like limits of liability, under said prior insurance, of $5,000 in respect to any one person and $10,000 in respect to any one accident causing injury to more than one person; and that this company shall only be held liable under this policy (subject to the limits of insurance therein made) for any loss sustained by the assured in excess of the amount covered by said prior insurance."

Among the conditions written in the policy and here involved, are, first, "the company's liability for an accident resulting to, or in the death of, one person is limited to $5000."

"14th. No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself *to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue.* No such action shall lie unless brought within the period within which a claimant might sue the assured for damages unless at the expiration of such period, there is such an action pending against assured, in which case an action may be brought against the company by the assured within thirty days after final judgment has been rendered and satisfied as above," etc. (Italics ours.)

Holding these two policies when the accident happened, the Century Company forthwith notified the two companies of it and likewise at once notified them of the bringing of the action against it by May Travis Cooper. Thereupon the Frankfort Company took charge of the action through its own attorneys and followed it through the circuit court and the Supreme Court and again in the circuit court to its termination, as hereinbefore noted. The Travelers took no active

hand whatever in the management of the case, although its local attorneys kept watch of the case in its progress through the courts, but in no manner whatever interfering or controlling its management. The Frankfort, it was admitted, had paid all attorney's fees, printing of briefs, travelling and all other expenses incident to the defense in the circuit and Supreme Courts, barring interest, if we are to class that as an ''expense.''

After the reversal of the judgment in the Cooper case by the Supreme Court and the payment of that judgment in the amount before stated, the Century Realty Company demanded payment of the amount which it had paid by way of debt, interests and costs from the two companies. The Frankfort Company, on August 6, 1910, in and through a written notice, offered and tendered to the Century Realty Company $5035.08, as in full settlement and satisfaction of any and all claims of whatsoever nature, which the Century Realty Company had or might thereafter have against it under the policy referred to, that is, $5000 on the debt and $35.08 interest on that sum, at the rate of 6 per cent from June 25, 1910, the date the judgment was finally entered, to August 16, 1910, the date of the tender. The Realty Company refused to receive this in full settlement. The Travelers, denying any liability whatever, made no tender.

Thereupon the Century Realty Company instituted separate actions against each of the companies. On motion and by agreement of parties the two actions were consolidated by the circuit court and heard as one action before the court and a jury. At the trial the facts were practically undisputed and were developed as we have set them out. The Frankfort Company introduced no evidence, its counsel stating he was satisfied to rest upon the evidence which had been introduced by the plaintiff. The Travelers introduced evidence tending to show that it had taken no active part

whatever in the management of the case of May Travis Cooper v. The Century Realty Company, but had been satisfied to leave the defense of that case in the hands of the attorneys for the Frankfort Company; had paid no part of the expense connected with the litigation, none of which had ever been demanded of it; that its local counsel "in a way" watched the case, not as of counsel in the case, but simply watched the attorneys for the Frankfort Company try the case, watching what was going on, and reporting to their client what had happened, but they took no part in the trial, filed no pleadings nor did anything else in connection with the case, apparently satisfied, as counsel for the Frankfort modestly suggested, that the conduct of the defense was in able hands.

At the close of the testimony in the case at bar, the Frankfort Company, among other requests, asked the court to instruct the jury that under the law and the evidence in this case, the plaintiff "cannot, under any circumstances, recover against the Frankfort Marine Accident & Plate Glass Insurance Company for an amount in excess of $5035.08." This was refused. Of its own motion the court instructed the jury, that under the pleadings and evidence it would find and return a verdict in favor of defendant Travelers Insurance Company, and would find and return a verdict in favor of plaintiff and against defendant Frankfort Marine Accident & Plate Glass Insurance Company, in the sum of $6753.40, with interest thereon from June 25, 1910, at the rate of 6 per cent per annum. Verdict accordingly, judgment following. Saving exception to the refusal of the instruction it had asked and to the giving of the one above set out, the Frankfort Insurance Company filed its motion for a new trial. Plaintiff also filed its motion for a new trial as to the Travelers Insurance Company, treating it as filed both in the original case of the company and in the consolidated case. These motions were

overruled, exceptions saved by the several parties and the causes appealed to this court.

REYNOLDS, P. J. (after stating the facts).— While all three of the cases were briefed and argued together before us, the case now to be considered relates to the appeal of the Frankfort Marine Accident & Plate Glass Insurance Company, but in consideration of that we are compelled, in a measure, to consider the position of the Travelers Insurance Company also, more incidentally, however, than directly.

Taking up this Frankfort case, counsel for that company, the appellant here, make two assignments of error. First, that the court erred in giving the peremptory instruction for a verdict in favor of plaintiff and against defendant Frankfort Insurance Company, in the sum of $6753.40, with interest from January 25, 1910; second, that the court erred in refusing to give the instruction asked by the Frankfort Company at the close of all the evidence.

These two assignments of error present two theories in antithesis: if the one is right, the other is wrong. The consideration of the action of the court in refusing one instruction necessarily involves that of its action in giving the other.

In support of their assignments, learned counsel for appellant, in brief, contend that the court erred in giving the instruction directing a verdict for the respondent against the Frankfort Insurance Company, because the policy of that company, it is claimed, was "a contract of indemnity against loss," and it was not liable to the Realty Company in any amount until the Realty Company sustained a loss, that when that loss was sustained the limit of the liability of the Frankfort Company was $5000, the amount specifically mentioned as the limit in the policy. As necessarily following from this, it is argued, that the special agreement under which the Frankfort Company agreed to

defend suits at its own cost, did not impose any liability on that company to pay interest on the judgment in excess of the limit of the policy, and that the special agreement under which the Frankfort Company agreed to defend suits at its own cost, did not impose upon that company any obligation to pay court costs incurred in any proceeding of an injured party against. the Realty Company.

Counsel for appellant cite Conqueror Zinc & Lead Co. v. Aetna Life Ins. Co., 152 Mo. App. 332, 133 S. W. 156, in support of their contention. The decision in that case is against counsel in so far as concerns the· matter of court costs, for there it is distinctly held that the insurer is responsible to the assured, in addition to the maximum amount of indemnity provided for in the policy, for the court costs incurred and paid. It is true that it is further there held that the insurer was not liable for interest that had accrued on the judgment. That part of this decision is not determinative here. The policy involved in the Conqueror Zinc & Lead Company case is identical in its provisions, so far as this point is concerned, with that issued by the Travelers Insurance Company, but differs in its language from that of the Frankfort, and the conclusion that the Aetna Life Insurance Company was not liable for more than the assured had in fact paid only up to $5000, is reached on the ground that its policy distinctly provided: "No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within sixty days from the date of such judgment and after trial of the issue." On this provision it was held the Aetna Company was not liable for interest, and that plaintiff there could only recover what it had paid out up to $5000. Hence the Conqueror Zinc & Lead Company case lends no aid to the contention of the appellant here, unless we are to

hold that the Frankfort policy, under its wording, is susceptible of the same interpretation. That is a question which we will consider hereafter.

Counsel for the Frankfort also rely upon Maryland Casualty Co. v. Omaha Electric Light & Power Co., 157 Fed. Rep. 514; Finley v. United States Casualty Co., 113 Tenn. 592; Davison v. Maryland Casualty Co., 197 Mass. 167; Puget Sound Improvement Co. v. Frankfort Marine Accident & Plate Glass Ins. Co., 52 Wash. 124; Frye v. Bath Gas & Electric Co.,97 Me., 241; and Henderson v. Maryland Casualty Co., 29 Penn. Sup. 398, in support of the proposition that the Frankfort was liable only for the amount paid, after payment by the assured. The policies in each of these cases expressly provided, as did that in the Conqueror Zinc Company case, and as does that of the Travelers Insurance Company, that no action should lie against the company except to reimburse the assured "for loss actually sustained and paid by him in satisfaction of a judgment, after trial of the issue;" if not in these words, in words of like tenor. These are all the cases cited by counsel for the Frankfort in support of their first proposition.

In support of their proposition that "court costs" are not to be included when they exceed the $5000 maximum, counsel for the Frankfort cite Munro v. Maryland Casualty Co., 96 N. Y. Supp. 705, and National & Providence Worsted Mills v. Frankfort Marine Accident & Plate Glass Ins. Co., 28 R. I. 126. The learned judge in the Munro case, supra, reaches his conclusion mainly on the authority of Connolly v. Bolster, 187 Mass. 266. But that case was on a policy similar in respect to those in the cases above cited and is not in point here. Moreover, so far as he holds the insurer not liable for costs, his decision runs counter to the majority of the above cases cited by counsel themselves on the first proposition, and as to nonliability for costs, is disaffirmed by the Supreme Court of New York, Appell-

ate Division, in Brewster v. Empire State Surety Co., 130 N. Y. Supp. 439. The Munro decision was by the Supreme Court at *nisi prius*, not in an appellate division. The Rhode Island decision confessedly rests on the Munro decision, supra, inadvertently treating it as a decision in the Appellate Division of the New York Supreme Court. The Rhode Island court, while following the Munro decision, says, as is also said in the Munro case, that the cases are conflicting and the Rhode Island court concludes to follow the Munro case.

Counsel for the Frankfort Company cite Finley v. Casualty Co., supra. That case, as well as Frye v. Bath Gas & Electric Co., supra, was one in which the party injured attempted, by suit in equity, to hold the insurer liable for injuries sustained, on the ground either that the assured was bankrupt or had made a fraudulent settlement, so that plaintiffs, as employees covered by the policies, claimed a right, in equity, to subrogation to the rights of the assured, and sought to hold the insurer. The claim was denied. The policy was on like conditions as those of the Travelers in the case before us, requiring, as a prerequisite to a right of recovery, payment by the assured. After pointing out the difference between the effect of a policy which insures directly against liability and one that insures against loss or damage by reason of liability, it is said, in the Finley case, (l. c. 598) : "Under the policies of the second kind, to which the one before us belongs, the amount of the insurance does not become available until the assured has paid the loss, and is not even then available unless proper notice has been given as provided in the policy."

We do not think that these cases, and they are the only cases cited by learned counsel for the Frankfort Company, meet or cover the conditions of the policy of that company which is before us. The first and principal contracting clause is, that the Frankfort Company "does hereby agree to indemnify.........

the assured............... against loss arising from
any legal liability for damages on account of bodily in-
jury or death........ suffered by any person........
resulting, from any and every accident........ happen-
ing in, or about the premises of the assured........
but the liability of the company in respect to any one
person suffering injury or death shall in no case exceed
the sum of $5000," etc.    This is all there is to it.    Not
a suggestion can be drawn from any of this language
that the payment is only to be made by the insurer in
reimbursement of what the assured shall or may have
paid.    On the contrary, as we understand it, it is more
in the nature of "a policy which insures directly a-
gainst liability, and one that insures against loss or
damage by reason of liability."    [Finley v. Casualty
Co., supra.    See also Salmon Falls Bank v. Leyser, 116
Mo. 51, 22 S. W. 504.]    If it was the intention to pay
only when and to the amount the assured had paid, a
reference to clause 14 of the Travelers policy shows
how easily that intention could have been expresed.
The most that can be said for the Frankfort Company
is that, failing to so write its policy, it has given one
which is ambiguous and any ambiguity must be re-
solved against it.    We conclude on this point, then,
that it was not within the expressed intention of this
policy issued by the Frankfort, that liability to make
payment to the assured should fall in only after the
assured had paid whatever damage may have been
awarded to the injured party.

It would seem on careful reading of the 3rd and
4th warranty clauses, that the words "cost" and
"costs" are used in a different sense in those clauses
and that payment is not confined to mere taxable court
costs, as that term is technically used.    Thus in the
third clause it is provided that, "if the company shall
offer to pay to the assured the full amount for which
the company is liable in respect to the claim sought to
be enforced, it shall not be bound to defend any legal

proceedings nor be liable for any *costs or expenses* which the assured may incur in defending the same." Surely this means that if the claim is put in suit, and the company defends, the company will then be liable *for the costs and expenses* of the action. That is the reasonable construction, at least.

In the fourth clause it is provided that the company may undertake "*at its own cost*" the settlement of any claim, and the assured shall not "except at its own *cost,* settle any claim nor incur any *expense* without the consent of the company." Here again the terms "cost" and "expense" are used as inclusive. But grant that the meaning of the words "cost" and "costs" is ambiguous, as used, then, as before remarked, we are to apply the well-settled rule that the terms and conditions employed in a policy of insurance are to be construed, if ambiguous or of doubtful meaning, most strongly against the insurer. [Grocery Co. v. Fidelity & Guaranty Co., 130 Mo. App. 421, 110 S. W. 29; Rochester Mining Co. v. Maryland Casualty Co., 143 Mo. App. 555, 128 S. W. 204; Beile v. Travelers Protective Ass'n. 155 Mo. App. 629, 135 S. W. 497.] Construing the words "cost" and "costs," in the connection used, they have a much broader meaning than mere taxable court costs.

Construing this contract in its most favorable light in favor of the assured, and having in mind the dual meaning of the word costs, and mindful of the use of the word "expenses" and the contracts as to their payment, we come to a consideration of the question as to the liability of the Frankfort Company for payment, not only of the court costs but of interest accruing between the date of the judgment, as originally entered and the payment thereof, payment having been suspended pending the determination of the case by the Supreme Court.

It is provided by section 7181, Revised Statutes 1909, that interest shall be allowed on all moneys due

upon any judgment from the day of rendering the same until satisfaction be made by payment, at the rate of 6 per cent per annum, unless a higher rate is fixed by the contract, in which case interest shall be at the contract rate. "It is a general rule, that an action cannot be sustained for the interest of a demand after the principal has been paid; but this rule is only applicable where there had been no contract for the payment of interest. In such cases, interest could only be recovered as damages for the nonpayment of the principal debt, and therefore, where the debtor (creditor?) accepts the full amount agreed to be paid, without saying anything about interest, such payment is presumed to be in full satisfaction of the demand." [Stone v. Bennett, 8 Mo. 41, l. c. 43.] "Interest is a compensation for the use of money, for its detention." [Borders v. Barber, 81 Mo. 636, l. c. 646; McDonald v. Loewen, 145 Mo. App. 49, l. c. 59, 130 S. W. 52.] "Interest (on money) is the compensation which is paid by the borrower of money to the lender for its use, and generally by a debtor to his creditor in recompense for his detention of the debt." [4 Words & Phrases, 3706.] "Interest is the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money." [Black's Law Dict. (2 Ed.), 647.] At common law, "interest is the legal damages or penalty for the unjust detention of money." [Madison County v. Bartlett, 2 Ills. 67.] "Interest is in the nature of damages for improperly withholding a debt, beyond the time when it ought to be paid." [Farmers' Bank v. Reynolds, 4 Rand. (Va.) 186.] Interest, therefore, when not awarded as a matter of contract, is given by law outside of the contract, when the contract has been breached. One promises to pay a fixed sum, at a definite time, on the happening of a named event. He does not promise to pay any larger sum; does not promise to pay interest. But if he fails to perform his contract, and is sued, he must pay, not only the

fixed sum, but interest on it, not by his contract, but by force of law by way of penalty for nonpayment in the amount and at the time when he should have paid it. If the debtor contests the claim, puts it in litigation, he has incurred, added, an obligation to pay interest as part of the price—part of the cost—of the litigation.

So it is here. The Frankfort Company undertook at its own cost and expense, unwilling to pay for any injury to one who fell within the protection of the contract, to litigate the cause, conduct the defense, and pay the costs of the litigation. That means the expense. That more than mere court costs is meant, is clear by the construction put upon it by the insurer itself, for as we have seen, it paid attorney's fees, printing, traveling and all other expenses connected with the defense of the case both in the circuit court and before the Supreme Court.

As we have before noted, it is said in Munro v. Maryland Casualty Co., (l. c. 706), that the authorities are conflicting as to the liability for interest when the interest added to the principal exceeds the maximum sum tendered, and that the divergent views are well stated in two cases, namely, Sanders v. Frankfort Marine, Accident & Plate Glass Ins. Co., 72 N. H. 485, and Connolly v. Bolster, 187 Mass. 266, and that in each case the policy involved was similar to that under consideration in the Munro case. As we have also noted, the policy in the latter corresponded to the policy in the Travelers case and contained the provision that no action should lie for any loss under the policy unless brought by the insured to reimburse him for loss actually sustained and paid by him in satisfaction of the judgment after trial of the issue, it being held that payment of the judgment was a condition precedent to liability on a policy, and the question of interest was not involved. The policy in Sanders v. Frankfort, etc., Ins. Co., was issued by the same company, appellant here, and is in the same form, with this very important

difference: in the policy before the Supreme Court of New Hampshire, the condition in clause 8 of the policy before the court was, "no action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue."

Curiously, also the 7th clause in this same Frankfort Company's policy which was before the Supreme Court of Washington, in Puget Sound Improvement Co. v. Frankfort, etc., Ins. Co., supra, corresponds to this eighth clause in its policy, which was involved in the Sanders case. No like clause or provision is in the Frankfort policy now before us or has been called to our attention, and we find none in the abstract of the record, which purports to set out the policies in full. Even with this eighth clause in the policy, however, it is held by the Supreme Court of New Hampshire that the insurer, if he elects to defend an action brought against the assured, is bound to protect the insured against liability at all stages of the litigation to the extent of the agreed indemnity, and he is not absolved from this obligation by the fact that the insured has not paid the amount of the judgment against him or is unable to do so by reason of insolvency, and it construes this 8th clause as applying solely to cases where the insurer denies liability for injuries which were made the subject of suit and refuses to defend.

In Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574, the policy was limited to the payment of $1500 for the death of any one person. There it is held that the plaintiff, the assured, was entitled to recover in an action against the insurer the amount of the insurance specified in the policy, that is $1500, with interest thereon from the time when the verdict was rendered in the former action and the costs recovered in that action with interest thereon from the time when they were paid.

In Anoka Lumber Co. v. Fidelity & Casualty Co., 63 Minn. 286, it is held that an employee having been injured while in the service of the assured and having recovered judgment thereon against the assured, the insurance company was liable upon an action against it, without the employer having first paid the judgment.

Possibly the most recent and certainly one of the most carefully considered opinions is that of Aetna Life Ins. Co. v. Bowling Green Gas Light Co., 150 Ky. 732. In that case it was held by the Court of Appeals of Kentucky, that where the contract of insurance stipulated that the insurer would pay a fixed sum of $5000 as indemnity to the assured, and in addition thereto would pay "the expense of litigation," if litigation was engaged in by its direction, the words "expense of litigation," include the costs of the suit incurred by the assured, the damages awarded the claimant on an appeal by the assured, and the interest that accrued on the judgment against the assured, the argument of the court being that as the insurance company has the right to compel the assured, against his will, to engage in litigation or else forfeit the right to any part of the indemnity he had contracted for, when it elects to burden the assured for the cost and expense of an action, the provisions of the policy should be liberally construed for his benefit.

In Saratoga Trap Rock Co. v. Standard Accident Insurance Co., 128 N. Y. Supp. 822, discussing the contract of insurance involved, it is said (l. c. 825): "The contract embraced in the policy which the defendant issued to the plaintiff is one of indemnity merely. It is not an agreement to save harmless or to pay when liability shall be established. If the first part of the agreement was not qualified by a subsequent clause, and if the only provision contained in the policy was that the insuring company would indemnify the assured against loss by reason of liability because of an accident happening to its servant, obligation to pay

would arise when judgment determining liability was entered against the insured (Stephens v. Pennsylvania Casualty Co., 135 Mich. 189, 97 N. W. 686), and whatever interest accrued in an ineffectual effort to get rid of the judgment the insuring company would be bound to pay. But the broad part of the agreement is qualified by a subsequent provision of the policy that no action shall lie against the company to recover for any loss upon the policy, unless it shall be brought by the assured for 'loss actually sustained and paid in money after actual trial of the issue.' This clause is a substantive part of the policy, and has the effect of changing the policy from one of indemnity when liability shall be established to one for indemnity for money paid out on the occurrence of a particular event, to-wit, payment of the judgment obtained because of such liability." That is a very clear illustration of the difference between the two policies before us. That of the Travelers does contain this limitation: that of the Frankfort which is before us, does not. It contains no clause providing for payment only in the amount and after the assured has paid.

In Brewster v. Empire State Surety Co., supra, following Saratoga Trap Rock Co. v. Standard Accident Ins. Co., supra, which latter rests mainly on Creem v. Fidelity & Casualty Co., 126 N. Y. Supp. 555, it is held that interest over the maximum amount cannot be recovered. But in all these cases, the insurer was only liable "for loss actually sustained and paid by him."

Our conclusion upon the consideration of all the cases, is that the better authority leads to the result that, under this form of policy issued by the Frankfort Company, the right of action of the assured did not depend upon judgment first being rendered against it and payment made by it thereof, but that its right to the indemnity accrued when the accident occurred for which it was liable; that the assured having turned over the defense of the action to the insurer and the

insurer having taken up the defense of it, it is liable for all the costs and expenses incurred in that action from the date the judgment against the assured was ordered to stand until its final payment; and that the fact that interest had accrued on that in excess of the maximum $5000, did not exempt the insurer from the payment of that interest. It follows from this that the trial court committed no error in giving the instruction in favor of the Travelers and in refusing the instruction asked by the Frankfort Company, nor in giving that under which the jury returned a verdict against that Company and in favor of the plaintiff.

In so holding we are not to be understood as holding that if the Frankfort policy before us contained the provision contained in the Travelers policy, there would be no liability for interest on the amount of a judgment rendered, accruing after judgment and before payment, that interest bringing the amount to be paid above the maximum. That question is not here before us and is not decided.

The judgment of the circuit court in this case is affirmed. *Nortoni* and *Allen, JJ.,* concur.

