CARL WEHRHAHN (PLAINTIFF-GARNISHEE), RESPONDENT, v. FORT DEARBORN CASUALTY UNDERWRITERS OF CHICAGO, ILLINOIS (GARNISHEE OF CORNELIUS D. MOYNIHAN), APPELLANT.*

St. Louis Court of Appeals. Opinion filed January 10, 1928.

*Corpus Juris-Cyc. References: Garnishment, 28CJ, p. 166, n. 99; p. 241, n. 27; p. 243, n. 31, 34; p. 342, n. 14; Liability Insurance, 36CJ, p. 1061, n. 2; p. 1062, n. 4; p. 1096, n. 58; p. 1097, n. 63, 67.

*Geers & Geers* for appellant.

232

*Sterling P. Bond* and *James J. O'Donohoe* for respondent.

BECKER, J.—On July 19, 1923, the garnisher, as plaintiff, commenced an action in the circuit court of the city of St. Louis against Cornelius D. Moynihan, as defendant, for personal injuries sustained by him on May 11, 1923, when he was struck and injured by

an automobile owned, controlled, maintained, used and operated by Moynihan.

Moynihan carried a policy of insurance with the garnishee, Fort Dearborn Casualty Underwriters, indemnifying him 'against any loss by reason of liability imposed by law upon the assured for damages on account of bodily injuries suffered by any person by reason of the ownership, maintenance or use of the automobile involved in the accident.

The policy also provided that the Underwriters would defend, in the name of Moynihan, any action brought against him to enforce a claim for bodily injuries, whether groundless or not, and under that clause of the policy the garnishee herein defended the suit. The trial in that case resulted in a verdict and judgment against the defendant Moynihan and in favor of the plaintiff for $1,797. A motion for new trial was in due course overruled. No appeal was taken.

Execution was issued on this judgment and returned *nulla bona,* and thereupon a summons in garnishment was issued and served upon the appellant, Fort Dearborn Casualty Underwriters, as garnishee.

The garnisher filed the conventional interrogatories to be answered by the garnishee, which answers in effect denied any indebtedness on the part of the garnishee to the defendant Moynihan. The reply of the garnisher was to the effect that at the time of the service of the writ of garnishment upon the garnishee, said garnishee was indebted to Moynihan, defendant, and the garnisher (judgment creditor) in the sum of $1,797, together with the costs in the damage suit in which the garnisher had judgment against the defendant Moynihan, by reason of an indemnity policy issued by the garnishee to the defendant Moynihan, by which policy the garnishee agreed to indemnify said Moynihan, defendant, against loss by reason of liability imposed by law upon the assured for damages on account of bodily injuries, etc.

It is conceded that the garnisher had judgment against the defendant Moynihan in a suit defended by the garnishee in the name of the defendant; that a liability policy had been issued by the garnishee which was in effect at the time plaintiff was injured, and that the said policy covered the automobile owned and operated by the defendant Moynihan at the time of said injury, and that no sum had been paid the defendant Moynihan by the garnishee on account of said policy.

On a trial of the case the jury returned a verdict finding that the garnishee was indebted to the defendant Moynihan in the sum of $2,116.36. From the resulting judgment the garnishee in due course brings this appeal.

It needs no citation of authorities to the general rule that in garnishment proceedings the plaintiff in the action acquires no greater

rights against the garnishee than the defendant himself possesses. Service of the garnishment order does not operate as an assignment, legal or equitable, of the debt due from the garnishee to the defendant, nor establish as between the plaintiff and the garnishee the relation of creditor and debtor, but it does give the plaintiff the statutory right to collect from the garnishee any debt due from the garnishee to the defendant, not in excess of the amount due from the defendant to the plaintiff, and in default of voluntary payment by the garnishee, the right to have execution therefor. If, therefore, in the present case the assured had a present right of action against the insurer, the judgment of the circuit court must be affirmed.

The defendant insurer here contends that the policy of insurance in question is a contract solely of indemnity against actual loss sustained by the assured, and not a contract by which the insurer guarantees the payment of any obligation or liability of the assured.

There is a well-recognized difference between contracts of indemnity against loss, and contracts of indemnity against liability. In the former the insurance company does not become liable until loss has actually been suffered and the amount of the insurance does not become available until the assured has paid the loss; whereas in the latter case the obligation of the insurance company becomes fixed when the liability attaches to the assured. [Klotzbach v. Ins. Ass'n (Mo. App.), 267 S. W. 39; Conqueror Zinc & Lead Co. v. Ins. Co., 152 Mo. App. 332, loc. cit. 338, 132 S. W. 156; Most v. Ins. Co. (Mo. App.), 196 S. W. loc. cit. 1064; Century Realty Co v. Ins. Co., 179 Mo. App. loc. cit. 144, 161 S. W. 630.]

Appellant, insurer here, as supporting its contention that the instant policy is one of indemnity against loss, cites a number of cases, an examination of which discloses that the policy construed in each of them contains a "no action" clause, which in effect provides that no action shall lie against the company to recover for any loss thereunder unless it shall be brought by the assured himself, to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue.

Here, however, the contract of insurance does not contain a "no action" clause, and consequently we therefore interpret the contract in light of the authorities which have passed upon policies of this character which do not contain said clause.

We note at the outset that under the terms of the policy the insurer agrees to indemnify and insure the assured against any loss by reason of liability imposed by law upon the assured for damage on account of personal injuries suffered by any person, etc., and that amongst other provisions in the policy the insurer agrees, "(A) to defend in the name and on behalf of the assured any suit brought against such assured to enforce a claim, whether groundless or not, for damage suffered or alleged to have been suffered on account of

the bodily injury or the death or damage to or destruction of property covered by the policy in question." "(B) To pay all costs taxed against the assured in any legal procedure against the assured, defended by the underwriters, in accordance with the foregoing agreement." Other provisions of the policy provide that, "(4) The assured shall notify the underwriters immediately upon the occurrence of any accident or loss or claim or suit, and that he shall deliver to the insurer copies of all documents and papers served upon him and give the best information obtainable in the premises, and that the assured shall aid the insurer in effecting settlements, secure information, and evidence, the attendance of witnesses and the procurement of appeals or like proceedings," and, "(11) That no suit or action on the policy for the recovery of any claim shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the foregoing requirements, nor unless commended within twelve months next after the happening of the loss."

This court, in the case of Century Realty Co. v. Frankfort Marine. Accident & Plate Glass Ins. Co., and Travelers' Ins. Co., 179 Mo. App. 123, 161 S. W. 624, had before it for construction two policies which contained in effect the several provisions (set out supra) which are found in the policy before us, one of the policies contained a "no action" clause, the other did not. After a review of many cases, the court, with reference to the policy without the "no action" clause came to the conclusion that the better authorities lead to the result that, under this form of policy, the right of action of the assured does not depend upon judgment first being rendered against it and payment made by it thereof, but that the right of the assured to the indemnity accrues when the accident occurs for which the assured is liable.

The Supreme Court of Oklahoma, in the case of Maryland Casualty Co. v. Peppard, 157 Pac. 597, loc. cit. 600, construed an indemnity policy in effect identical to the one before us, and held the policy one against liability. The following quotation from that case shows the reasoning applied to reach said result:

"From an examination of the opinions in the cases sustaining what may be called the majority rule, we are unable to say to what extent the courts rendering them were influenced by the 'no action' clause in reaching their conclusions. However, if any of these cases hold that the phrase 'indemnify against loss from the liability imposed by law upon the assured for damages on account of bodily injuries,' standing alone literally means 'indemnity against loss from the liability imposed by law upon the assured for damages on account of bodily injuries which have been actually paid or extinguished by the assured,' we cannot agree with them. 'Loss from liability' literally means loss which arises immediately upon one becoming liable

to another, not loss which arises immediately upon such liability being paid or extinguished. 'Liability' is defined in Webster's New International Dictionary as 'that which one is under obligation to pay, or for which one is liable.' In our judgment, it is faulty reasoning which leads to the conclusion that one can suffer no loss if he is unable to pay that which he is under obligation to pay. Many modern business men, we dare say, would deem the loss of money insignificant compared to the loss of good name, not to mention other losses which inevitably follow inability to meet honest obligations. However, as upon this literal interpretation the actual amount of recovery might be somewhat obscure, and such contracts are practically unknown to the casualty insurance business, it would be unreasonable to assume that the parties intended the contracts should belong to one of the two well-known classes into which such contracts have been generally divided by the companies extensively engaged in the casualty insurance business, to-wit, 'policies to indemnify against loss' and 'policies to indemnify against liability.' It may be well to state here that the difference between the two classes of contracts is that upon the former an action cannot be brought and a recovery had until the liability is discharged, while upon the latter the cause of action is complete when the liability attaches.

"It seems quite clear to us that, while the clause of the policies under discussion herein contains some of the elements of both classes, it does not precisely fit either. The rule is that, when the evidence of the agreement furnished by the contract itself is not plain and unmistakable, but is open to more than one interpretation, the reasonableness of one meaning as compared with the other, and the probability that men in the circumstances of the parties would enter into one agreement or the other, is competent for consideration on the question as to what the agreement was which the written contract establishes. [Kendall v. Green, 67 N. H. 557, 42 Atl. 178.] In view of all the circumstances surrounding transactions of this kind, we are of the opinion that it is more in harmony with right, justice, and reason, and the rules governing the construction of contracts of insurance, which are always prepared by the insurer, to hold that the policies before us indemnify the assured against liability. In American Employers' Liability Ins. Co. v. Fordyce, 62 Ark. 562, 54 Am. St. Rep. 305, 36 S. W. 1051, the court, construing a similar policy, said: 'This is plainly a contract to pay liabilities.' To the same effect are American Employers' Liability Ins. Co. v. Fordyce, supra; Lewinthan v. Travelers' Ins. Co., 61 Misc. 621, 112 N. Y. Supp. 1031; Clark v. Bonsal, 157 N. C. 270, 48 L. R. A. (N. S.) 191, 72 S. E. 954. In all of these authorities, as well as in Anoka Lumber Co. v. Fidelity & C. Co., 63 Minn. 286, 30 L. R. A. 689, 65 N. W. 353; Sanders v. Frankfort Marine, Acci. & Plate Glass Ins.

Co., supra; Hoven v. Employers' Liability Assur. Corp. (Hoven v. West Superior Iron & Steel Co.), 93 Wis. 201, 32 L. R. A. 388, 67 N. W. 46 and Fenton v. Fidelity & C. Co., 36 Ore. 283, 48 L. R. A. 770, 56 Pac. 1096, provisions similar to those hereinbefore set out, marked 'c' 'd' and 'e,' reserving the right in the insurer to settle and defend actions against the assured, etc., are considered as furnishing evidence that the contract was one of indemnity against liability.

"We are also impressed by this consideration. It seems to us there is cogency in the reasoning that by undertaking the defense the company elected to treat the plaintiff's cause of action, if he had any, as covered by its policy, and, when it substituted itself and its judgment for that of the assured, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured."

We note that this court has cited with approval Maryland Cas. Co. v. Peppard, supra, as to the meaning of the phrase "to indemnify against loss by reason of liability imposed by law." [See McManus v. Tralles (Mo. App.), 253 S. W. 406, loc. cit. 410.]

In Ravenwood Hospital v. Cas. Co., 280 Ill. 103, "where a policy insured 'against loss from liability imposed by law for damages on account of injury or death sustained by a patient while under treatment,'" the Supreme Court of Illinois held that when judgment was entered against the insured, "the loss on account of such liability was sustained."

As to an indemnity policy containing a somewhat similar provision, the same conclusion was reached in Nolan v. Ins. Co., 219 Ill. App. 531. And in Murgic v. Cas. Co., 243 Ill. App. 650, it was held that:

"Where appellee was insured against any loss by reason of the liability imposed by law upon him for damages on account of bodily injuries accidentally suffered by any person by reason of his ownership or use of his car, it was not incumbent upon appellee to prove payment of the judgment before filing suit against the insurer."

In Minnesota, policies of the character in question here, even though they contain the so-called "no action" clause, have been held to permit the insured to recover on the policy after judgment, without having paid same.

In Reilly v. Cas. Co., Garnishee, 151 Minn. 1, the court held:

"In an action brought by a third party against the insured under an indemnity policy, where the insurer assumes the defense as it agreed to do under the policy, a judgment in the action becomes as between plaintiff, defendant and the insurer a liability or debt owing unconditionally by the insurer to the insured, which may be reached by garnishment."

In Anoka Lbr. Co. v. Fid. & Cas. Co., 63 Minn. 286, the policy there in question contained the usual "no action" clause but plain-

tiff was allowed to recover by garnishment. In the course of the opinion the court said:

"If the plaintiff is forbidden to settle a claim for an accident of this kind, we fail to see how it is imperative upon him to pay a judgment rendered against him upon such claim as a condition precedent to his right of recovery. The insurance company, by the terms of its own policy, has taken into its own hands the whole machinery for settling such claim, and will not allow the employer to do it."

In Patterson v. Adan, Maryland Cas. Co., Garnishee, 119 Minn. 308, where the court had before it an indemnity policy "against loss by reason of liability imposed by law upon the assured for damages on account of bodily injuries," and which policy contained a "no action" clause, it held that:

". . . in a policy such as this, where the company has come into the litigation and assumed exclusive control thereof under its contract, it recognizes a liability, if it fails to defend successfully, to pay the assured the amount of the judgment it so permits to be established, not exceeding the sum stipulated in the policy, and also that, as to the plaintiff, it should be considered that such judgment is a debt due the assured from the company, and not dependent on any contingency. Payment of the judgment, so far as the rights of the company are concerned, in such case, is a mere *pro forma* matter, and not a condition precedent to its liability to defendant under plaintiff's garnishee proceeding."

In another jurisdiction the same result is arrived at by a different process of reasoning. In Davies v. Cas. Co., 89 Wash. 571, in an indemnity policy containing a "no action" clause, the court, in the course of the opinion, ruled:

"The Casualty Company, in effect, says to Mrs. Davies that if the coal company will pay her at one end of the desk the casualty company will repay the coal company at the other end. Not one thing besides, does it argue, is wanting to its liability except this formula. On that process it insists, not because when the coal company shall have first paid and the casualty company shall then have given reimbursement there will result to it a right, claim or even a salvage interest against the coal company or its assets, but because it wishes the thing done in just that way. It will pay a moment after, not a moment before, the coal companys pays. If the latter will but get a loan for a few moments from some one else and pay the judgment, then the casualty company will hand it a check perhaps long previously prepared. Such mummeries are ill favored by the law. Technicality indeed is not only reputable, but is to be enforced by courts whenever a remote right is exposed to danger. When technicality is invoked, however, to avoid an obligation morally established, the com-

240

mon law usually finds in its arsenal some weapon with which to confront it and to make that a legal which is already a moral debt.

. . . . . . . .

"But, in taking over the defense, the insurer assumes a feature of liability contract as distinguished from an indemnifying contract. When an accident occurs, he hurries to protect the assured and himself from liability by defeating the claimant in advance. But when the claimant has been successful, the insurer, falling back on the other theory, argues that he is not a liability insurer, only a reimbursing insurer. This shifting subjects him to the familiar doctrine of estoppel by election in inconsistent positions. The law does not permit him to have the exemptions of a reimbursement engagement and the benefits of a liability engagement at the same time. If he wishes to rely upon the former he may continue to do so under the words of his contract and leave the defense to the assured. When he takes over the defense himself he will not be heard to say that he has not assumed the position of a liability insurer. Accordingly, we hold that, by conducting the defense, the employer's insurer waived the right to exact prepayment by the assured, and that, on the final judgment of Davies against the coal company 'loss' matured the policy, as one of reimbursement could then be either sued on by the assured or be assigned."

In Elliott v. Life Ins. Co., 100 Neb. 833, that court held:

"Where, according to the terms of an indemnity policy, an insurance company has taken sole and exclusive charge of the defense of an action against the insured for damages for the death of the latter's employee and a judgment has been rendered against the insured, the liability of the insurance company is subject to garnishment where the insured is insolvent, notwithstanding a provision that 'no action shall lie against the company to recover for any loss or expense under this policy unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after actual trial of the issue.' "

Again, in Griffin v. Gen. Cas. & Surety Co., 231 Mich. 642, the court, among other things, held that:

"Where the insurer, under its policy, took exclusive charge of the defense of an action for personal injuries against the insured, insurer is estopped to deny liability for the amount of the judgment rendered against the insured on the ground that the insured had not yet satisfied said judgment."

And in Blanton v. Cotton Mills Co., Def., and Kans. City Cas. Co., Garnishee, 103 Kans. 118, the court ruled that where the insurance company assumes control of the defense of suits upon the claims of employees of the insured, the contract should be regarded as one to indemnify the insured against liability, and that the casualty com-

pany is subject to garnishment at the suit of a judgment creditor of the insured.

In ascertaining the meaning of the policy in question, all the provisions of the policy must be considered and if the terms are uncertain, or are susceptible of two meanings, that meaning is to be given which is more favorable to the assured. This rule of law is sustained by a long line of cases down to the recent case of Swanson et al., v. Cas. Co. (Mo.), 287 S. W. 455.

In line with our ruling in the case of Century Realty Co. v. Frankford Marine, Accident & Plate Glass Ins. Co. and Travelers' Ins. Co., supra, construing the language in the policy before us, this contract, in our view, cannot be viewed other than as an indemnity against liability. It follows, under the conceded facts in the case, that when plaintiff brought this action, the defendant was indebted to the insured under the policy of indemnity in question, and that the judgment is for the right party. It is ordered affirmed. *Daues, P. J.,* and *Nipper, J.,* concur.