

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 28, 2004

The Honorable Todd Staples
Chair, Infrastructure Development and
   Security Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0265

Re: Whether the Gun Barrel City Economic
Development Corporation may fund the construction
of a youth football field  (RQ-0221-GA)

Dear Senator Staples:

You ask whether the Gun Barrel City Economic Development Corporation (the "Corporation") may, based on the ballot language approved by the city's voters, fund the construction of a youth football field.[1]

On May 3, 1997, the voters of Gun Barrel City (the "City") approved the adoption of a one-half percent sales and use tax under section 4B, article 5190.6 of the Revised Civil Statutes, the Development Corporation Act of 1979 (the "Act"). *See* TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2004-05).[2] Section 4B authorizes an eligible city to create an industrial development corporation and to levy a sales and use tax for the benefit of the corporation, if approved by a majority of the voters at an election called for that purpose. *See id.* § 4B(b), (d). Other than the tax rate and descriptions of specific projects, section 4B does not specify the contents of the tax election proposition or ballot to be submitted to the voters. *See id. See also* Tex. Att'y Gen. Op. No. JC-0494 (2002) at 1-2. Upon receipt of the sales tax proceeds, the city must deliver the tax proceeds to the corporation to pay the costs of "projects" as defined by section 4B(a). *See id.* § 4B(g)(1)-(2). At the time of the Gun Barrel City election, projects included "land, buildings, equipment, facilities, and improvements" found by the corporation's board to:

> (A) be required or suitable for use for professional and *amateur (including children's) sports, athletic,* entertainment, tourist, convention, and *public park purposes* and events, including stadiums, ball parks, auditoriums, amphitheaters, concert halls, learning centers,

---

[1]Letter from Honorable Todd Staples, Chair, Senate Infrastructure Development & Security Committee, to Honorable Greg Abbott, Texas Attorney General (May 4, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]We will cite the present version of article 5190.6, section 4B, except when we need to refer to provisions existing at the time of the May 3, 1997 election.

parks and park facilities, open space improvements, municipal buildings, museums, exhibition facilities, and related store, restaurant, concession, and automobile parking facilities, related area transportation facilities, and related roads, streets, and water and sewer facilities, and other related improvements that enhance any of those items; *or*

(B) *promote or develop new or expanded business enterprises,* including a project to provide public safety facilities, streets and roads, drainage and related improvements, demolition of existing structures, general municipally owned improvements, as well as any improvements or facilities that are related to any of those projects *and any other project that the board in its discretion determines promotes or develops new or expanded business enterprises.*

Act of May 22, 1993, 73d Leg., R.S., ch. 1022, § 3, 1993 Tex. Gen. Laws 4424, 4426 (emphasis added) (former TEX. REV. CIV. STAT. ANN art. 5190.6, § 4B(a)(2)).[3]

A prior opinion of this office, Attorney General Opinion JC-0494 (2001), addressed the election you inquire about, but you state that this opinion considered a ballot proposition different from the one that the voters actually saw and approved. *See* Request Letter, *supra* note 1, at 2. Attorney General Opinion JC-0494 quoted from the city ordinance calling the election. *See* GUN BARREL CITY, TEX., ORDINANCE NO. 1997-005 (1997). The ordinance, dated March 11, 1997, called a special election to be held on May 3, 1997, to submit to city voters "a proposition of whether an additional sales and use tax of ½ of one percent shall be imposed for the promotion and development of new and expanded business enterprises." *Id.* § 1. The ordinance provided for

the proposition to be expressed on the official ballot in a form substantially as follows:

**PROPOSITION NO. 1**

The adoption of an additional ½ of one percent sales and use tax for the promotion and development of new and expanded business enterprises.

For_____Against_____

*Id.* § 3. Another ordinance canvassed the special election returns and found that "the proposition for the adoption of a Section 4B sales and use tax at the rate of one-half of one percent" passed at the special election held May 3, 1997. GUN BARREL CITY, TEX., ORDINANCE NO. 1997-007 (1997).

---

[3]The terms "learning centers" and "municipal buildings" no longer appear in article 5190.6, section 4B(a)(2)(A) and the conjunction "or" was removed from the end of this provision and placed at the end of section 4B(a)(2)(D). In the present version of section 4B(a)(2)(B), the phrase "that create or retain primary jobs" has been inserted following the phrase "expanded business enterprises." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2) (Vernon Supp. 2004-05).

Relying on the ballot proposition set out in the city ordinance, Attorney General Opinion JC-0494 considered whether the section 4B tax revenues could be used to build a youth league football field at the city park, where no discernible economic advantage was associated with the project. *See* Tex. Att'y Gen. Op. No. JC-0494 (2002) at 2 (quoting Request Letter).[4] Attorney General Opinion JC-0494 noted that section 4B(a)(2)(A) does not require the projects it authorizes to promote economic development, even though the overall purpose of the Act is to promote economic development. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 3, 21 (Vernon Supp. 2004-05). The opinion did not decide whether section 4B(a)(2)(A) authorizes projects that do not promote business development, because the ballot proposition approved by the voters required the sales tax to be used for economic development purposes. *See* Tex. Att'y Gen. Op. No. JC-0494 (2002) at 3-4. This question about section 4B(a)(2)(A) is, however, relevant to your inquiry.

You provide a certified copy of the official ballot voted upon at the May 3, 1997 election. The ballot provides, in English and Spanish, that voters are to vote for or against the following proposition:

> The adoption of a Section 4B sales and use tax at the rate of one-half of one percent to undertake *projects as described in Section 4B of Article 5190.6, including but not limited to projects for the promotion of professional and amateur athletics and sports*, including stadiums, ball parks, auditoriums, projects related to entertainment, convention, tourist, and exhibition facilities, amphitheaters, concert halls, and public parks, park facilities and events, open space improvements, learning centers, municipal buildings, museums, and related stores, restaurant, concession, and automobile parking facilities, related area transportation facilities, and related roads, streets, and water and sewer facilities, recycling facilities **and *projects to promote new or expanded business enterprises*** including public safety facilities, streets and roads, drainage, and related improvements, demolition of existing structures, and general improvements that municipally owned, as well as any other improvements or facilities that are related to any of the above projects *and any other project that the board determines will promote new or expanded business enterprises*, and the maintenance and operations expenses for any of the above described projects.

OFFICIAL BALLOT, SPECIAL ELECTION, CITY OF GUN BARREL CITY, TEXAS (May 3, 1997) (emphasis and boldface added) [hereinafter Official Ballot].

---

[4]*See* Letter from Honorable Jim Solis, Chair, Committee on Economic Development, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Nov. 7, 2001) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) (RQ-0462-JC, requesting Attorney General Opinion JC-0494).

The City Secretary has informed us that the Mayor of Gun Barrel City drafted the Official Ballot proposition intending to list all authorized uses of the sales tax revenues.[5] The ballot language first paraphrases the definition of "project" in section 4B(a)(2)(A), stating that the sales and use tax may be used, among other things, for "projects for the promotion of professional and amateur athletics and sports, including stadiums, [and] ball parks." Official Ballot. The section 4B(a)(2)(A) projects are not required to "promote new or expanded business enterprises." *Id.* The ballot then paraphrases the former section 4B(a)(2)(B) definition of project, which, unlike section 4B(a)(2)(A) projects, must "promote new or expanded business enterprises."[6]

Legislative history shows why section 4B(a)(2)(A) does not refer to economic development. Section 4B as adopted authorized only those projects now defined by section 4B(a)(2)(A). *See* Act of Mar. 21, 1991, 72d Leg., R.S., ch. 11, § 2, 1991 Tex. Gen. Laws 37, 37. The enactment included the following legislative finding:

> The legislature finds for all constitutional and statutory purposes that the authority granted by this Act is for the public purposes of development and diversification of the economy of the state and an eligible city, the elimination of unemployment or underemployment in the state and an eligible city, and the expansion of commerce in the state and that this Act accomplishes those public purposes.

*Id.* § 1, 1991 Tex. Gen. Laws 37, 37. Thus, the legislature found that section 4B(a)(2)(A) projects accomplished public purposes relating to economic development and did not require the board of an economic development corporation to make a similar finding for individual projects within section 4B(a)(2)(A).

We turn to the Official Ballot that you have submitted. The language that the Official Ballot placed before the voters differs considerably from the language of Proposition No. 1 set out in the Gun Barrel City Ordinance No. 1997-005. *See generally Scarborough v. Eubank*, 53 S.W. 573, 574 (Tex. 1899) (the important matter in every election is that the will of the voters be fairly expressed, correctly declared, and legally enforced). *Accord Ferrell v. Harris County Fresh Water Supply*, 241 S.W.2d 242, 244 (Tex. Civ. App.–Galveston 1951, no writ) (quoting *Scarborough*, 53 S.W. at 574).

The courts look to the language actually voted upon to ascertain the voters' intent, and the ballot proposition becomes part of the city's "contract with the voters." *See Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) (the proceeds of bonds voted by the people must be expended for the purposes for which they were voted); *Taxpayers for Sensible Priorities v. Dallas*, 79 S.W.3d 670,

---

[5]Telephone Conversation with Christy Eckerman, City Secretary, Gun Barrel City, Texas (Aug. 19, 2004).

[6]We do not consider any issue about the validity of the election that the difference between the city ordinance and the official ballot language may raise. The deadline for filing an election contest suit has passed. *See* TEX. ELEC. CODE ANN. § 233.006 (Vernon 2003). Nothing indicates that the election in question was void and therefore subject to collateral attack. *See Brown v. Blum*, 9 S.W.3d 840, 846 at n. 8 (Tex. App.–Houston [14th Dist.] 1999, pet. dism'd w.o.j.) (election is void when city is wholly without authority to call the election).

672 (Tex. App.–Dallas 2002, pet. denied) (contract between city and voters consisted of bond proposition itself). *See also Fletcher v. Howard*, 39 S.W.2d 32, 35 (Tex. 1931) (bond proceeds may not be diverted from highway described in county order); *Robbins v. Limestone County*, 268 S.W. 915, 919 (Tex. 1925) (taxes levied and collected for particular purpose may not be diverted to purposes other than for which they were voted); Tex. Att'y Gen. Op. Nos. GA-0156 (2004) at 7-8, JC-0400 (2001) (summarizing law on "contract with the voters"). Proceeds of the section 4B sales tax may be used only for the purposes authorized by statute and expressly approved by the voters. *See* Tex. Att'y Gen. Op. Nos. GA-0156 (2004) at 7-8, JC-0494 (2002) at 4, JC-0400 (2001) at 4.

Under the language of section 4B(a)(2)(A) and the Official Ballot, the Board of the Gun Barrel City Economic Development Corporation may use sales tax collected under section 4B sales taxes for "land, buildings, equipment, facilities, and improvements . . . found by the board of directors to . . . be required or suitable for use for professional and amateur (including children's) sports, athletic . . . and public park purposes." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2)(A) (Vernon Supp. 2004-05). Accordingly, the Gun Barrel City Economic Development Corporation may use the section 4B sales tax to fund the construction of a youth football field. *See* Tex. Att'y Gen. Op. No. JC-0400 (2001) at 7 ("nature/birding center" is within the scope of public park purposes authorized by section 4B and incorporated by reference into ballot proposition).

While Attorney General Opinion JC-0494 correctly stated the law, it was based on incorrect facts. It is overruled to the extent it is inconsistent with this opinion.

## S U M M A R Y

Consistent with the election proposition approved by the voters in 1997, the sales taxes collected in Gun Barrel City under section 4B of the Development Corporation Act of 1979 may be used to fund facilities for amateur sports, including children's sports, athletic, and public park purposes. The legislature has determined that section 4B(a)(2)(A) projects accomplish public purposes relating to economic development and the board of an economic development corporation is not required to make this finding for individual projects within this provision. Attorney General Opinion JC-0494 (2002), which was based on incorrect facts, is overruled to the extent it is inconsistent with this opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee